Clarence E. BEARDSLEE, Appellant,

v.

UNITED STATES of America, Appellee.

No. 76–1214.

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 4, 1976.

Decided Aug. 19, 1976.

Clarence E. Beardslee, pro se.

William F. Clayton, U. S. Atty., and Bruce W. Boyd, Asst. U. S. Atty., Sioux Falls, S. D., for appellee.

Before HEANEY, ROSS and WEBSTER, Circuit Judges.

PER CURIAM.

The appellant in this action, Clarence E. Beardslee, appeals from an order of the district court denying his post-conviction claims pursuant to 28 U.S.C. § 2255. After a hearing the trial court denied his claims. We affirm.

Appellant Beardslee was convicted by jury on July 29, 1966, for the June 1965 murders of his mother and half brother in Mission, South Dakota. On appeal, these convictions were reversed and a new trial was ordered. *Beardslee v. United States,* 387 F.2d 280 (8th Cir. 1967). Rather than a new trial, Beardslee waived further prosecution by indictment and opted to plead guilty to an information charging him with one count of murder in the second degree. As a result, the indictment on both counts of first degree murder on which he had previously been convicted was dismissed. The trial court gave Beardslee a life sentence on the one count of murder in the second degree. He had previously received concurrent life sentences on the earlier first degree murder convictions.

On this appeal of his § 2255 motion Beardslee has made two contentions.

■ He first asserts that the information to which he pleaded guilty was "void" as being in violation of Rule 7 of the Federal Rules of Criminal Procedure, and that it was "not equal to the indictment." This latter contention, that proceeding by information is impermissible when an indictment has previously been issued, is without merit. Appellant offers no authority for his argument that the government was precluded from proceeding by information because of the prior indictment.

Rule 7(b) of the Federal Rules provides for waiver of indictment:

(b) Waiver of Indictment. An offense which may be punished by imprisonment for a term exceeding one year or at hard labor *may be prosecuted by information if the defendant, after he has been advised of the nature of the charge and of his rights, waives in open court prosecution by indictment.* (Emphasis added.)

The transcript of the arraignment, plea and sentence (May 27, 1968) reflects substantial compliance with the Rule. Appellant was warned of his right to remain silent, to have an attorney (which he had), and of the right to proceed by grand jury indictment if he chose. The information charging one count of second degree murder was read to Beardslee; in response to the court's questioning, he indicated that he had received a copy of the information and that he understood the charges. The record states that the appellant was presented with a waiver form and he signed it in open court.

■ No particular ritual must be followed by the trial court in accepting the waiver of indictment. *Bartlett v. United States,* 354 F.2d 745 (8th Cir.), *cert. denied,* 384 U.S. 945, 86 S.Ct. 1471, 16 L.Ed.2d 542 (1966).

[T]he Court must be satisfied that the waiver was knowingly, voluntarily, and understandingly made, which would include information being supplied from any reliable source respecting the nature of the charges against him, his rights and the possible penalties applicable to the charges made.

*Id.* at 748. The record here reflects substantial compliance with the *Bartlett* test.

Additionally, Beardslee contends that the federal court was without jurisdiction to hear his case. The two murders for which he had first been convicted, which included the one to which he later pleaded guilty, had taken place in Mission, South Dakota. Mission is located within Todd County, South Dakota, and, according to the opinion in Beardslee's appeal which also explored the jurisdictional claim, "[t]here is no dispute as to the *facts* which bear upon jurisdiction." *Beardslee v. United States, supra,* 387 F.2d at 284 (emphasis added). "The alleged offenses were committed within the original outer boundaries of the Rosebud Reservation but in a house on land then owned by non-Indians and rented to Mrs. Schaeffer by these non-Indian owners." *Id.* The original patent had been issued to an Indian allottee, but the Indian title was

subsequently extinguished by conveyance to non-Indians in August, 1959. *Id.*

Appellant does not contest these basic facts, but instead argues that the Supreme Court's opinion in *DeCoteau v. District County Court,* 420 U.S. 425, 95 S.Ct. 1082, 43 L.Ed.2d 300 (1974) has changed the *status* of Todd County as "Indian country" as defined in 18 U.S.C. § 1151.[1] In *DeCoteau* the Court dealt not with the Rosebud Reservation, the location of Todd County, but with the Lake Traverse Reservation, created by an 1867 treaty between the United States and the Sisseton and Wahpeton bands of Sioux Indians. The boundaries of Lake Traverse Reservation, generally in northern South Dakota and southern North Dakota, are described in Treaty of February 19, 1867, 15 Stat. 505; the boundaries of the Rosebud Reservation are described in Act of March 2, 1889, ch. 405, § 2, 25 Stat. 888. The two reservations did not overlap.

The Indian conduct in *DeCoteau* did occur on non-Indian, unallotted land within the 1867 reservation boundaries. *DeCoteau v. District County Court, supra,* 420 U.S. at 428, 95 S.Ct. 1082. However, the Supreme Court *also* concluded that as to this particular land, reservation status had been terminated by the Congressional Act of March 3, 1891, c. 543, 26 Stat. 1035. *DeCoteau v. District County Court, supra,* 420 U.S. at 444–445, 95 S.Ct. 1082. Appellant cites no statute similarly disestablishing the reservation status of Todd County in the Rosebud Reservation.

■ Ownership of the land alone by a non-Indian is not sufficient to change reservation status. "[W]hen Congress has once established a reservation all tracts included within it remain a part of the reservation until separated therefrom by Congress." *DeCoteau v. District County Court, supra,* 420 U.S. at 444, 95 S.Ct. at 1092, *quoting United States v. Celestine,* 215 U.S. 278, 285, 30 S.Ct. 93, 54 L.Ed. 195 (1909).

■ The Court reiterated that "[i]n particular, we have stressed that reservation status may survive the mere opening of a reservation to settlement * * *." *DeCoteau v. District County Court, supra,* 420 U.S. at 444, 95 S.Ct. at 1093.

■■ Without any evidence of Congressional intent to disestablish the Todd County portion of the Rosebud Reservation, the conclusion reached in Beardslee's first appeal remains pertinent:

> Other courts almost uniformly have upheld federal jurisdiction or denied state jurisdiction, where the offense was committed by an Indian *within the boundaries of a reservation* but on particular land not owned by an Indian. Disestablishment thus is not effected by an allotment to an Indian or by conveyance of the Indian title to a non-Indian. (Emphasis added, footnote omitted.)

*Beardslee v. United States, supra,* 387 F.2d at 286. The authority on this point consistently holds that Todd County remains within the Rosebud Reservation. Judge Blackmun in the first *Beardslee* appellate opinion concluded from his research that "[o]nly three Acts of Congress have affected the territory of the reservation since its establishment in 1889 and none of these concern Todd County. * * * No part of the Todd County portion of the reservation has ever been formally opened." *Id.* at 285.

Similarly last year in *Rosebud Sioux Tribe v. Kneip,* 521 F.2d 87 (8th Cir. 1975), *cert. granted,* 425 U.S. 989, 96 S.Ct. 2199,

---

1. Federal jurisdiction, 18 U.S.C. § 1153, extends over "Indian country" as defined by the Act.

    § 1151. Indian country defined
    Except as otherwise provided in sections 1154 and 1156 of this title, the term "Indian country", as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same. June 25, 1948, c. 645, 62 Stat. 757; May 24, 1949, c. 139, § 25, 63 Stat. 94.

48 L.Ed.2d 814 (1976), where the court dealt with the South Dakota counties of Gregory, Tripp, Lyman, and Mellette, it also added that: *"Todd County* remains unopened." *Id.* at 88 n.1 (emphasis added).

For these reasons, it was correct that federal jurisdiction over the offenses, rather than state, was exercised. Judgment affirmed.