731 P.2d 1352

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Angus R. ORTIZ, Defendant-Appellant.**

**No. 9377.**

Court of Appeals of New Mexico.

Dec. 23, 1986.

Jacquelyn Robins, Chief Public Defender, Deborah A. Moll, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., Patricia Frieder, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

MINZNER, Judge.

Defendant, an Indian, was arrested and subsequently charged with burglary and larceny, crimes which stemmed from the unauthorized entry of a motor vehicle belonging to a non-Indian. The incident occurred within the corporate limits of Espanola. However, the area where the incident occurred is also within the exterior boundaries of the San Juan Pueblo (Pueblo). The incident occurred either on privately-held land of a non-Indian, or upon a public thoroughfare which runs through the area, in a residential area used and occupied primarily by non-Indians.

It is not disputed that the Espanola municipal government provides essential governmental services, including police services, to the area. Defendant pled guilty in district court to one count of burglary, expressly reserving his right to appeal the court's jurisdiction. The court denied defendant's motion to dismiss, ruling that it had jurisdiction over the crimes and over defendant.

■ Defendant filed his notice of appeal prior to entry of judgment and sentence but after a sentencing hearing, at the end of which the district court announced its disposition. Under these circumstances, we conclude defendant perfected a timely appeal from a final judgment. *See* NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App.R. 202(a) (Repl.Pamp.1983); *cf. State v. Garcia,* 99 N.M. 466, 659 P.2d 918 (Ct. App.1983) (trial court was without jurisdiction to enter judgment and sentence during pendency of appeal); *see also State v. Harris,* 101 N.M. 12, 677 P.2d 625 (Ct.App. 1984).

The issue on appeal is whether the state district court had subject matter jurisdiction to try defendant for the charge of burglary. Pivotal to the issue raised by defendant is whether the situs of the alleged offense, involving lands lying within the exterior boundaries of San Juan Pueblo, is "Indian country" within the meaning of 18 U.S.C. Section 1151 (1982), thus depriving the state of jurisdiction to prosecute defendant. Other issues, raised in the docketing statement but not briefed, are deemed abandoned. *State v. Maes*, 100 N.M. 78, 665 P.2d 1169 (Ct.App.1983). We reverse and remand with instructions to dismiss the indictment against defendant and discharge him.

**DISCUSSION.**

■ Generally, New Mexico lacks jurisdiction to prosecute criminal charges against Indians for offenses committed within the boundaries of an Indian reservation except where such jurisdiction has been specifically granted by Congress or sanctioned by a decision of the United States Supreme Court. *See State v. Warner*, 71 N.M. 418, 379 P.2d 66 (1963); *see generally* Crosse, *Criminal and Civil Jurisdiction in Indian Country*, 4 Ariz.L. Rev. 57 (1962–63). The underlying rationale for this principle is non-interference with Indian sovereignty. *See Ryder v. State*, 98 N.M. 316, 648 P.2d 774 (1982). Although the principle sometimes results in deference to tribal jurisdiction, on these facts the problem is whether Congress has provided exclusive federal jurisdiction. We conclude that it has.

Pursuant to its constitutional authority, Congress has enacted the Major Crimes Act, which provides that the United States has exclusive jurisdiction over certain enumerated crimes committed within "Indian country" by an Indian against another Indian or any other person. 18 U.S.C. § 1153 (Supp.III 1985). The crime of burglary is included as a major crime in the federal Act. *Id.*

18 U.S.C. Section 1151 defines "Indian country" as:

(a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

■ The principal test for determining whether a tract of land is "Indian country" within the meaning of Subsection 1151(a) for the purposes of the Major Crimes Act is whether the land in question has been validly set apart for the use of Indians as such, under the superintendence of the United States government. *See United States v. John*, 437 U.S. 634, 98 S.Ct. 2541, 57 L.Ed.2d 489 (1978). By its terms the test has several parts: (1) the federal government must have recognized an area as subject to Congressional authority for the use of Indians; (2) the authority must be a valid exercise of Congressional power; and (3) the area must be subject to Congressional authority at the present time. In applying the test, the Supreme Court has examined legislative history, and the past and present relationship of the United States government to the Indian tribe, in order to reach an appropriate conclusion about the land in question. *Id.; see also United States v. McGowan*, 302 U.S. 535, 58 S.Ct. 286, 82 L.Ed. 410 (1938); *United States v. Pelican*, 232 U.S. 442, 34 S.Ct. 396, 58 L.Ed. 676 (1914).

Our supreme court has observed that the terms of Section 1151(a) largely overlap with the terms of Section 1151(b). *See Blatchford v. Gonzales*, 100 N.M. 333, 670 P.2d 944 (1983), *cert. denied*, 464 U.S. 1033–34, 104 S.Ct. 691, 79 L.Ed.2d 158 (1984). "[I]t is apparent that Indian reservations and dependent Indian communities are not two distinct definitions of place, but definitions which largely overlap." *Id.* at 335, 670 P.2d at 946. On the facts, we apply the

principal test in resolving the appellate issue. The answer brief filed by the state concedes that, "[t]aken as a whole, congressional action as well as case law largely supports defendant's position in the case at bar."

The lands of the Pueblo, like those of other New Mexico pueblos, are held and occupied pursuant to a grant made by the Spanish government during the time when New Mexico was a Spanish possession. That grant subsequently was confirmed by the Mexican government after it declared independence from Spain, and then by Congress after the territorial cessions made by the Treaty of Guadalupe Hidalgo. *See United States v. Chavez,* 290 U.S. 357, 54 S.Ct. 217, 78 L.Ed. 360 (1933); Pueblo Indian Land Grants Act of 1924, ch. 331, 43 Stat. 636.

The terms upon which New Mexico was admitted to the Union recognized the lands owned or occupied by Pueblo Indians as "Indian country." *See generally Your Food Stores, Inc. (NSL) v. Village of Espanola,* 68 N.M. 327, 361 P.2d 950 (1961). Lands owned or occupied by Pueblo Indians are subject to the legislation of Congress, *see United States v. Sandoval,* 231 U.S. 28, 34 S.Ct. 1, 58 L.Ed. 107 (1913), and the Pueblo Indians have a relationship to the United States government that is comparable to the relationship between that government and any other recognized tribe of Indians. *See Mountain States Telephone & Telegraph Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 105 S.Ct. 2587, 86 L.Ed.2d 168 (1985); *United States v. Candelaria,* 271 U.S. 432, 46 S.Ct. 561, 70 L.Ed. 1023 (1926).

The state argues that in *United States v. Sandoval* the Supreme Court established what has been referred to as the "functional approach" test, *see United States v. Martine,* 442 F.2d 1022 (10th Cir.1971), to determine that the Santa Clara Pueblo was a dependent Indian community, and therefore "Indian country." In *United States v. Martine,* the court approved the trial court's inquiry " 'as to the nature of the area in question, the relationship of the

inhabitants of the area to Indian Tribes and to the federal government, and the established practice of government agencies toward the area.' " *United States v. Mound,* 477 F.Supp. 156, at 158 (D.S.D.1979) (quoting *United States v. Martine,* 442 F.2d at 1023). The state suggests that the same test is relevant in determining the status of the area within the San Juan Pueblo where the offenses charged in this case occurred. We disagree, for the following reasons.

The definition of "Indian country" did not include land within the boundaries of a reservation at the time *United States v. Sandoval* was decided. Congress did not include the term "reservation" in the definition of "Indian country" until 1948. *See United States v. John.* Thus, the *Sandoval* Court identified the pueblo in question as a distinctive Indian community in order to conclude that Congress had jurisdiction to legislate with respect to the lands then held or occupied by Pueblo members. The approach employed in *United States v. Sandoval* extended Congressional authority over Pueblo lands by construing the relevant constitutional provision to include the Pueblo Indians. *See generally State v. Dana,* 404 A.2d 551 (Me.1979), *cert. denied,* 444 U.S. 1098, 100 S.Ct. 1064, 62 L.Ed.2d 785 (1980). It would be anomalous to apply the "functional approach" test in this case, because the result would be to expand state court jurisdiction. Under the relevant rule of construction, "doubtful expressions" should be resolved in favor of limiting state jurisdiction. *See Seymour v. Superintendent of Washington State Penitentiary,* 368 U.S. 351, 82 S.Ct. 424, 7 L.Ed.2d 346 (1962).

For purposes of Section 1153, we see no reason why the Pueblo should not enjoy the same sovereignty over its formally designated land as an Indian tribe occupying lands formally designated as a reservation. *See Cheyenne-Arapaho Tribes of Oklahoma v. State of Oklahoma,* 618 F.2d 665 (10th Cir.1980). Our cases have equated the sovereignty of the Pueblo Indians over lands owned or occupied by them with that of Indians living on a reservation over land

within the boundaries of the reservation. *See State v. Warner; Your Food Stores, Inc. (NSL) v. Village of Espanola.* Thus, the underlying rationale for limiting state jurisdiction supports our conclusion that, for purposes of Section 1153, land within the exterior boundaries of a Pueblo is indistinguishable from land lying within the exterior boundaries of an Indian reservation. *See United States v. Pueblo of San Ildefonso,* 513 F.2d 1383 (Ct.Cl.1975).

While it is not possible in New Mexico to avoid occasional jurisdictional confusion and competition, the result sought by the state would exacerbate the present difficulties. If an extensive factual inquiry is necessary to make a jurisdictional determination, *see City of Sault Ste. Marie, Michigan v. Andrus,* 532 F.Supp. 157 (D.D.C. 1980), criminal trials will be delayed. In addition, by adopting the state's argument, we would encourage a more extensive pattern of "checkerboard jurisdiction." This result is inconsistent with Congressional intent. *See Seymour.*

■ Although earlier U.S. Supreme Court cases have described the communities located on pueblos as dependent Indian communities, *see United States v. Martine,* in those cases the court in fact applied the principal test as stated in *United States v. John.* We do the same. Based on the relationship between the United States government and the Pueblo Indians, the Congressional action taken to confirm and hold in trust for the Pueblo Indians land granted them by the prior governments, and the unquestioned authority of Congress to enact legislation which affects that land, we are constrained to conclude that land lying within the exterior boundaries of an Indian Pueblo, such as the San Juan Pueblo, is "Indian country" within the meaning of Section 1151. *See United States v. John.*

■ The particular facts of this case do not require a conclusion that the area in question has lost its status as "Indian country." *See Beardslee v. United States,* 541 F.2d 705 (8th Cir.1976); *State ex rel. Irvine v. District Court of Fourth Judicial District in and for Lake County,* 125 Mont. 398, 239 P.2d 272 (1951). Because there is no evidence of any relevant change in status, the controlling fact is that the offense occurred within the exterior boundaries of the Pueblo. *See People v. Luna,* 683 P.2d 362 (Colo.App.1984). On these facts, the district court lacked jurisdiction to try defendant for burglary. 18 U.S.C. §§ 1151(a) and 1153; *United States v. John. Cf. Blatchford v. Gonzales* (Yah-Tah-Hey area near Navajo Indian reservation is not a "dependent Indian community" and not within "Indian country").

■ The state argues that, even if crimes were committed in "Indian country," it has jurisdiction to try defendant because it has elected to assume jurisdiction over "Indian country" in accordance with 25 U.S.C. Section 1324 (1982). The state acknowledges that our supreme court has addressed this argument, in the context of a similar federal statute, in several opinions. *See Blatchford v. Gonzales; Chino v. Chino,* 90 N.M. 203, 561 P.2d 476 (1977); *Your Food Stores, Inc. (NSL) v. Village of Espanola.* The state does not draw our attention to any law of this state which has been enacted since Section 1324 was enacted, and we are not aware of any law. The New Mexico Constitution expressly waived jurisdiction over "Indian country," *see Your Food Stores, Inc. (NSL) v. Village of Espanola,* and in the absence of any affirmative steps taken by the New Mexico legislature pursuant to Section 1324, we cannot agree that the state has elected to assume such jurisdiction under the federal statute. *Id.* NMSA 1978, Section 31–10–3 (Repl.Pamp.1984), relied on by the state, was enacted in 1889 prior to statehood and does not constitute an assumption of jurisdiction over "Indian country" within the contemplation of 25 U.S.C. Sections 1321–1326 (1982).

## CONCLUSION.

The charge of larceny having been dismissed pursuant to the plea agreement, the district court erred in denying defendant's motion to dismiss for lack of jurisdiction

over the crimes charged against him. We reverse and remand with instructions to dismiss the indictment against defendant. Our decision concluding on these facts that Congress has divested the state of criminal jurisdiction over an Indian defendant, charged with a major crime occurring within the exterior boundaries of an Indian pueblo, does not abrogate defendant's responsibility for his alleged criminal act; defendant is subject to prosecution in the federal courts.

IT IS SO ORDERED.

DONNELLY and FRUMAN, JJ., concur.