734 P.2d 278

**STATE of New Mexico,
Plaintiff-Appellant,**

v.

**Raymond BEGAY, Defendant-Appellee.**

No. 9434.

Court of Appeals of New Mexico.

Feb. 17, 1987.

Hal Stratton, Atty. Gen., Patricia Frieder, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Jacquelyn Robins, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellee.

## OPINION

BIVINS, Judge.

This appeal raises two issues: (1) whether the trial court erred in dismissing Count 3 of the criminal information; and (2) whether the trial court lacks subject-matter jurisdiction to hear this case.

Defendant, a Navajo Indian, was involved in a head-on automobile collision that killed a woman, who was seven months pregnant, and another woman. The unborn child also died. The victims were Indians. The criminal information charged defendant with two counts of vehicular homicide (Counts 1 and 2), pursuant to NMSA 1978, Section 66–8–101(A) (Cum. Supp.1986), and with injury to a pregnant woman (Count 3), pursuant to NMSA 1978, Section 66–8–101.1 (Cum.Supp.1986). The victim of the crimes charged in Counts 2 and 3 was the same person.

Defendant moved the trial court to dismiss Count 3 of the criminal information, arguing that Counts 2 and 3 merged into one offense. The trial court granted defendant's motion. The state, pursuant to NMSA 1978, Section 39–3–3(B)(1), appealed the trial court's dismissal of Count 3. We granted the state's request for an interlocutory appeal and issued a memorandum opinion reversing the trial court's dismissal of Count 3 of the indictment and remanding with instructions to proceed to trial on the merits without merging the offenses.

Defendant also moved the trial court to dismiss the case for lack of jurisdiction. The parties stipulated that the site of the accident was within land purchased by the United States Government and held in trust for the Navajo Tribe, and that defendant is an enrolled member of that tribe. Defendant contended that the land where the accident occurred was Indian country under 18 U.S.C. Section 1151 (1982), and not within the jurisdiction of New Mexico state courts. The trial court denied defendant's motion to dismiss for lack of jurisdiction. Defend-

ant raised the issue of lack of jurisdiction in a separate application for leave to file an interlocutory appeal. We denied defendant leave to file an interlocutory appeal and advised defendant he could raise the issue upon the entry of a final judgment, should it become necessary. After we issued the memorandum opinion on the merger issue, defendant filed a motion for rehearing on the issue of jurisdiction. . Defendant argued in his motion for rehearing that we should resolve the jurisdictional matter now, prior to trial, in the interest of judicial economy so as to avoid an unnecessary trial should the trial court lack jurisdiction to hear the case. Upon that premise, we granted defendant's motion and now address the jurisdictional question posed.

We withdraw the memorandum opinion filed September 11, 1986, and substitute this opinion. We remand the issue of jurisdiction to the trial court for additional fact-finding. If defendant presents sufficient facts to satisfy the jurisdictional requirements outlined in this opinion, the trial court must dismiss the case for lack of jurisdiction. Should defendant fail to present sufficient facts to establish lack of jurisdiction, the trial court should proceed to trial on the merits. So as to avoid a further appeal should the latter occur, we set forth our decision on the merger question.

## JURISDICTION

A party can attack subject-matter jurisdiction at any time in the proceedings, even raising jurisdiction for the first time on appeal. *Perea v. Baca,* 94 N.M. 624, 614 P.2d 541 (1980); *Chavez v. County of Valencia,* 86 N.M. 205, 521 P.2d 1154 (1974). Demonstrating a lack of jurisdiction is defendant's burden. *State v. Cutnose,* 87 N.M. 307, 532 P.2d 896 (Ct.App. 1974).

The federal government has exclusive jurisdiction over certain crimes listed in 18 U.S.C. Section 1153 (Supp. II 1985) when these crimes are committed by an Indian in Indian country. *State v. Ortiz,* 105 N.M. 308, 731 P.2d 1352 (Ct.App.1986). Section 1151 defines Indian country as:

(a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

Lands held by the United States in trust for an Indian tribe and outside the boundaries of an Indian reservation, as is the situation here, are not specifically listed in this definition. We must determine if such lands are included in the definition of Indian country.

Neither party argues that the land in question qualifies as a reservation, dependent Indian community or allotment. The state contends that because lands held in trust are not included in the above definition, such lands are not Indian country. Defendant contends that the trial court lacks jurisdiction to try him in this matter because he is a Navajo Indian and the crime occurred in Indian country. Defendant's brief, however, sidesteps the issue of why land held in trust and outside the boundaries of an Indian reservation should be considered Indian country. Defendant instead relies on *State v. Begay,* 63 N.M. 409, 320 P.2d 1017 (1958), *rev'd on other grounds, State v. Warner,* 71 N.M. 418, 379 P.2d 66 (1963), and argues that the holding in *Begay* is dispositive. In *Begay,* the New Mexico Supreme Court ruled that the district courts of this state lacked jurisdiction to try the defendant, a Navajo Indian, where the offense took place on a state highway right-of-way running through the Navajo Reservation.

We agree with defendant that the facts in *Begay* resemble the facts in our case. We disagree, however, that *Begay* is dispositive. *Begay* dealt with jurisdiction where charges arose within the boundaries of the reservation proper, not on trust land outside of reservation boundaries. We

must look further to determine the status of the land in question here.

*Ortiz,* while helpful generally, does not address the precise issue before us. Rather, *Ortiz* decides that for purposes of Section 1153, land within the exterior boundaries of an Indian pueblo is Indian country, the same as land within the exterior boundaries of an Indian reservation. Thus, we distinguish *Ortiz* on that basis.

The status of trust lands located outside reservation boundaries is uncertain. F. Cohen, *Handbook of Federal Indian Law,* ch. 1, § D5 at 45 (1982 ed.) Several cases have discussed the status of land held in trust for Indian tribes.

The * * * lands in question here were declared by Congress to be held in trust by the Federal Government for the benefit of the Mississippi Choctaw Indians who were at that time under federal supervision. There is no apparent reason why these lands, which had been purchased in previous years for the aid of those Indians, did not become a "reservation," at least for the purposes of federal criminal jurisdiction at that particular time.

*United States v. John,* 437 U.S. 634, 649, 98 S.Ct. 2541, 2549, 57 L.Ed.2d 489 (1978) (land in question had been proclaimed a reservation at time of suit, so discussion of status of land held in trust is dicta).

In *Langley v. Ryder,* 602 F.Supp. 335 (W.D.La.1985), the court ruled that land held by the United States in trust for the Coushatta Tribe was Indian country under Section 1151 and subject only to the jurisdiction of federal courts. However, the district court subsequently discovered that the land in question was actually reservation land, expressly subject to exclusive federal jurisdiction by Subsection 1151(a). *Id.* at 341, n. 6. In affirming the district court, the appeals court noted the district court's error and stated that "whether the lands are merely held in trust for the Indians or whether the lands have officially been proclaimed a reservation, the lands are clearly Indian country and the district court's conclusion was correct." *Langley*

*v. Ryder,* 778 F.2d 1092, 1095 (5th Cir. 1985).

Finally, in *Cheyenne-Arapaho Tribes v. Oklahoma,* 618 F.2d 665, 668 (10th Cir. 1980), the court stated: "We are convinced that, barring possible specific exceptions to which our attention is not directed, lands held in trust by the United States for the Tribes are Indian Country within the meaning of § 1151(a)." Thus, state hunting and fishing laws did not apply to members of the tribe on land held in trust by the United States for the tribe. *Id.* at 668. At first glance, it would appear that *Cheyenne-Arapaho* requires we hold the trust lands in question Indian country. We hesitate to do so without more facts. In *Cheyenne-Arapaho,* the lands were located within the reservation and apparently used by the tribe. In the case before us, we assume the land lies outside the reservation, and we have no information regarding its use.

While the cases discussed above are not necessarily dispositive of the issue in question, they do demonstrate the reluctance of courts to extend state jurisdiction over Indian lands. "Under the relevant rule of construction, 'doubtful expressions' should be resolved in favor of limiting state jurisdiction." *Ortiz,* 105 N.M. at 311, 731 P.2d at 1355. Favoring such limitation, we remand to the trial court for additional factfinding.

■ As mentioned before, the parties stipulated that the land involved is federally owned and held in trust for the Navajo Tribe, and that defendant is a member of that tribe. Although the parties may have thought that these facts are sufficient to determine jurisdiction, we cannot so determine. On remand, defendant still has the burden of demonstrating lack of jurisdiction. *Cutnose. Contra Hartley v. Baca,* 97 N.M. 441, 640 P.2d 941 (Ct.App.1981) (where challenging party submits uncontested affidavit regarding jurisdiction, burden shifts to opposing party).

The principle test for determining whether a tract of land is "Indian country" within the meaning of Subsection 1151(a) is whether the land in question has been validly set apart for the use of Indians, under

the superintendence of the United States Government. *Ortiz.*

[T]he test has several parts: (1) the federal government must have recognized an area as subject to Congressional authority for the use of Indians; (2) the authority must be a valid exercise of Congressional power; and (3) the area must be subject to Congressional authority at the present time. In applying the test, the [United States] Supreme Court has examined legislative history, and the past and present relationship of the United States government to the Indian tribe, in order to reach an appropriate conclusion about the land in question.

*Id.,* 105 N.M. at 310, 731 P.2d at 1354; *see also United States v. Martine,* 442 F.2d 1022 (10th Cir.1971).

Cases that discuss "use" criteria include *United States v. Martine* and *Blatchford v. Gonzales,* 100 N.M. 333, 670 P.2d 944 (1983). The trial court should make appropriate findings of fact regarding the status of the land in question and the jurisdiction issue.

While we may logically infer that land held in trust for a tribe is necessarily set apart for the use of the tribe, we are reluctant to do so. If defendant submits evidence showing that the land in question is Indian country, the state court will have no jurisdiction. The federal government will have exclusive jurisdiction. § 1153. Should defendant fail in his burden, then this case shall proceed on the merits.

We note that 25 U.S.C. Section 1324 (1982) allows states to affirmatively assume jurisdiction over Indian country by passing a statute similar to NMSA 1978, Section 31–10–3 (Repl.Pamp.1984). Because our legislature has not so assumed jurisdiction subsequent to the passage of Section 1324, federal courts retain exclusive jurisdiction over Indian country at this time. *See Blatchford.*

**MERGER**

As discussed above, the state appealed the trial court's decision to grant defendant's pretrial motion for merger of Counts 2 and 3 of the criminal information. We reverse the decision of the trial court.

Count 2 alleges a third degree felony of homicide by vehicle in violation of Section 66–8–101(A). "Homicide by vehicle is the killing of a human being in the unlawful operation of a motor vehicle." § 66–8–101(A). This statute applies when the vehicular killing occurs while driving under the influence of intoxicating liquor or drugs, or while driving recklessly. *State v. Montoya*, 93 N.M. 346, 600 P.2d 292 (Ct. App.1979).

Count 3 alleges a third degree felony of injury to a pregnant woman in violation of Section 66–8–101.1. This crime involves "injury to a pregnant woman by a person other than the woman in the unlawful operation of a motor vehicle causing her to suffer a miscarriage or stillbirth as a result of that injury." § 66–8–101.1(A).

Defendant contends that Count 3 should merge into Count 2. Defendant claims that vehicular homicide of the pregnant woman necessarily includes injury to a pregnant woman. The state maintains that vehicular homicide does not necessarily include injury to a pregnant woman because it is possible to cause the death of a non-pregnant woman through the unlawful use of a motor vehicle. We agree.

▆▆▆ Merger is an aspect of double jeopardy. The concept is applied to prevent a person from being punished twice for the same offense. *State v. Sandoval*, 90 N.M. 260, 561 P.2d 1353 (Ct.App.1977). Double jeopardy principles require that two offenses merge when one offense necessarily involves another, either under a statutory analysis of the elements of each offense in light of the facts of the case, or where it is impossible to commit one offense without necessarily committing the other offense. *State v. Jacobs*, 102 N.M. 801, 701 P.2d 400 (Ct.App.1985).

▆▆▆ In the case before us, a comparison of the statutory elements of the two offenses for which defendant is charged shows that either offense can be committed without committing the other offense. Section 66–8–101(A) requires the killing of a human being, whereas Section 66–8–101.1 does not. *See State v. Johnson*, 102 N.M. 110, 692 P.2d 35 (Ct.App.1984). The same operative facts are not necessary to prove each offense. As already mentioned, the offense of vehicular homicide is proved by evidence showing that the victim died of injuries caused by defendant's unlawful operation of a motor vehicle. *See* NMSA 1978, UJI Crim. 2.60 (Repl.Pamp.1982). The offense of injury to a pregnant woman is proved by showing that defendant, while unlawfully operating a motor vehicle, caused injury to the victim resulting in a miscarriage or still birth. *See* § 66–8–101.-1(A).

Defendant argues that merely because the legislature has created two separate statutory offenses does not mean that the two offenses can never merge. We agree. However, because the two statutory offenses involved here require proof of different facts, we believe that the legislative intent in enacting the two statutes is to punish a person who violates the two statutes under the provisions of both. *See, e.g., State v. Trujillo*, 85 N.M. 208, 510 P.2d 1079 (Ct.App.1973). We note that when an unlawfully operated automobile strikes a pregnant woman, four different results might occur: (1) the mother dies, but the fetus does not—Section 66–8–101(A) would apply; (2) the fetus dies, but the mother does not—Section 66–8–101.1 would apply; (3) both mother and fetus die—Sections 66–8–101(A) and –101.1(A) would apply; or (4) neither mother nor fetus dies—neither statute would apply. Here, because it is possible to commit one offense without necessarily committing the other offense, merger does not occur. *See Jacobs*.

Accordingly, we reverse the trial court's dismissal of Count 3 of the information. If the trial court determines that it has jurisdiction, we remand with instructions to reinstate Count 3 and proceed to trial on the merits. If the trial court finds that it lacks jurisdiction, this case must be dismissed.

IT IS SO ORDERED.

DONNELLY, C.J., and FRUMAN, J., concur.