Certiorari Denied, November 7, 2012, No. 33,802

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMCA-002

Filing Date: August 9, 2012

Docket No. 30,842

STATE OF NEW MEXICO,

Plaintiff-Appellee,

v.

MILROY VANDEVER,

Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY
Grant L. Foutz, District Judge

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**WECHSLER, Judge.**

**{1}**     Defendant Milroy Vandever was involved in an automobile accident in the checkerboard area of western New Mexico; a highway worker was killed. Defendant filed a motion to dismiss, contending that the district court lacked jurisdiction because he is an enrolled member of the Navajo Nation and the accident occurred in Indian country. The

1

district court denied the motion, and Defendant pled guilty to homicide by vehicle, driving while under the influence of intoxicating liquor or drugs (DWI), and knowingly leaving the scene of an accident involving great bodily harm or death. We affirm the decision of the district court denying the motion to dismiss because Defendant did not meet his burden of establishing that the accident occurred in Indian country.

## I.    BACKGROUND

{2}    Defendant, while driving under the influence of alcohol, struck and killed a highway worker. He continued driving and was eventually stopped by police. The arresting officer smelled a strong odor of alcohol on Defendant, and Defendant admitted drinking a six-pack of beer. A blood test revealed a blood alcohol level of .19.

{3}    Defendant was charged with aggravated DWI, homicide by vehicle, and knowingly leaving the scene of an accident. Defendant filed a motion to dismiss the case based on lack of jurisdiction and later filed supplemental briefs in support of the motion. Following a hearing, the district court denied the motion. Defendant then entered a conditional plea of guilty, the district court entered its judgment and sentence, and Defendant filed this appeal. In his plea agreement, Defendant reserved the right to appeal the district court's decision denying his motion to dismiss.

## II.    JURISDICTION OF THE DISTRICT COURT

{4}    Generally, under the Indian Country Crimes Act, 18 U.S.C. §§ 1151 to -70 (1948, as amended through 2010), "a state does not have jurisdiction over crimes committed by an Indian in Indian country." *State v. Frank*, 2002-NMSC-026, ¶ 12, 132 N.M. 544, 52 P.3d 404. The State does not dispute that Defendant is an enrolled member of the Navajo Nation. According to Defendant, the accident occurred within Indian country for purposes of criminal jurisdiction based on all three definitions of Indian country delineated in 18 U.S.C. § 1151.

{5}    Specifically, Defendant claims that the land is historically, by treaty, within the boundaries of the Navajo Nation (we intend "Navajo Nation" to include reference to the area designated by Congress as "reservation"); the land is the location of a dependent Indian community; and the land is part of an Indian allotment. The State counters that, regardless of the historical physical or exterior boundaries of the Navajo Nation, the accident did not occur within the current exterior boundaries, and the land is not included in any dependent Indian community or any Indian allotment on the date of the accident.

### A.    Standard of Review

{6}    In our review, we defer to the district court's findings of fact that are supported by substantial evidence and review de novo the district court's interpretation of the Indian Country Crimes Act as a question of law. *State v. Romero*, 2006-NMSC-039, ¶ 6, 140 N.M.

2

299, 142 P.3d 887. As the party who challenged the jurisdiction of the district court, Defendant has the burden of demonstrating a lack of jurisdiction. *State v. Begay*, 105 N.M. 498, 499, 734 P.2d 278, 279 (Ct. App. 1987); *State v. Cutnose*, 87 N.M. 307, 309, 532 P.2d 896, 898 (Ct. App. 1974).

## B.     Location of Accident

**{7}**     The accident occurred on the eastbound exit ramp at the intersection of State Highway 412 and I-40 at mile marker 63. The parties agree that the Navajo Nation owns this land in fee simple and uses it as "chapter land" for its Baca Chapter. A chapter is a political subdivision of the Navajo Nation. *See Hydro Res., Inc. v. U.S. Envtl. Prot. Agency*, 608 F.3d 1131, 1137 n.3 (10th Cir. 2010) (stating that "Church Rock Chapter was first established . . . by the United States as a subdivision of the Navajo Nation government" (internal quotation marks and citation omitted)).

**{8}**     Defendant's expert witness in the establishment of land status and jurisdiction in McKinley County, Tim Larsen, an employee of the McKinley County Geographic Information System, testified that chapter land is land set aside for a chapter to develop. The State's expert witness, Chad Begaye, a geographical system technician for the Navajo Nation, explained that the Navajo Nation considers chapter land to be fee land under its control. Begaye testified that the Navajo Nation pays county property taxes on the Baca Chapter land. He stated that there is no difference between chapter land and fee land and that the Baca Chapter house is located on fee land. Begaye added that the Navajo Nation pays county property taxes on all chapter and fee land.

**{9}**     Based on the evidence presented in the district court, we conclude that the accident occurred on fee land owned by the Navajo Nation, land on which the Baca Chapter house is located. We must thus determine whether Defendant met his burden of showing that the crimes occurred in Indian country so as to bar state district court jurisdiction.

## C.     Indian Country

**{10}**     The Indian Country Crimes Act defines "Indian country" as

> (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

18 U.S.C. § 1151.

## 1. Reservation

{11}    Defendant claims that the accident occurred within the "traditional/historical" boundaries of the Navajo Nation as established by the 1868 treaty between the Navajo Nation and the United States.  Defendant did not produce a map or other document to support this claim.  Defendant's expert witness, Larsen, provided contradictory testimony, stating that the area identified as Navajo Nation land on a map of the area including the accident site fell within the traditional boundaries of the Navajo Nation from the 1868 treaty but, also, that the land in question does not fall under federal supervision.  At the conclusion of the hearing, the district court questioned the parties as to the witness testimony regarding the exterior boundaries of the Navajo Nation.  Defense counsel clarified Larsen's testimony by stating that, based on the Navajo Nation Code and common use, it is common to refer to the territorial jurisdiction and the exterior boundaries of the Navajo Nation interchangeably.  Defense counsel informed the district court that an 1868 treaty boundary map would not even include the lands under the jurisdiction of the Eastern Navajo Agency. *See Hydro Res., Inc. v. U.S. Envtl. Prot. Agency*, 562 F.3d 1249, 1255 n.4 (10th Cir. 2009) (describing the Eastern Navajo Agency as an administrative arm of the Bureau of Indian Affairs that superintends certain lands located by, but not within, the Navajo Nation), *vacated on other grounds by* 608 F.3d 1131 (10th Cir. 2010); *Texaco, Inc. v. Zah*, 5 F.3d 1374, 1375 n.2 (10th Cir. 1993) (explaining that the Navajo Nation Code defines Navajo Indian country as land within the exterior boundaries of the Navajo Nation or within the Eastern Navajo Agency, all land within dependent Indian communities, all Navajo allotments, and all land held in trust or owned in fee or leased by the United States to the Navajo Nation); *see also* Navajo Nation Code Ann. tit. 7, § 254(A) (2005).  In other words, as defense counsel conceded, Larsen was referring generally to the Navajo Nation's view of its territorial jurisdiction, which includes lands outside the contiguous boundaries of the Navajo Nation, rather than limiting his opinion to the exact boundaries of the Navajo Nation based on the 1868 treaty. Larsen's testimony did not demonstrate that the accident site was within the 1868 treaty boundaries of the Navajo Nation.

{12}    As the State suggests, since the 1868 treaty was signed, there have been changes made to Navajo Nation treaty boundaries by congressional acts of diminishment, temporary expansions of boundaries, allotments of parcels of land to individual Indians, and return of land to the public domain. *See Pittsburg & Midway Coal Mining Co. v. Yazzie*, 909 F.2d 1387, 1400-03 (10th Cir. 1990).  The Navajo Nation is not unique in this regard. *See State v. Davids*, 534 N.W.2d 70, 81 (Wis. 1995) (holding that due to diminishment and allotment of lands, the pond in which the defendant had been fishing was no longer part of the current reservation, but was on land within the jurisdiction of the state).  Because of the changes of boundaries that have taken place, we consider the Navajo Nation boundaries at the time of the accident to be determinative for jurisdiction under the Indian Country Crimes Act rather than the historical treaty boundaries. *Cf. Romero*, 2006-NMSC-039, ¶ 31 (Chavez, J., specially concurring) (recognizing the ability of Congress to alter reservation boundaries and thereby change the jurisdiction status of affected land).  Defendant did not present evidence to show that the accident site was within the boundaries of the Navajo Nation as they existed

on the date of the accident.

**{13}** Following presentation of evidence and argument, the district court specifically rejected Defendant's claim that the accident occurred within the current exterior boundaries of the Navajo Nation and asked if the parties could agree to a map outlining the exterior boundaries without requiring testimony from a witness. The district court's comments indicate that it was asking if a map could be produced to show whether the accident occurred within the current exterior boundaries of the Navajo Nation, on trust land, on allotment land, or on fee land owned by the Navajo Nation. The State then supplemented the record with Exhibit 3, a land status map that does not explicitly identify the current Navajo Nation boundaries; instead, it refers to "Navajo Nation Trust Land" in a large area that appears to be Navajo Nation land. Nevertheless, the district judge orally determined that the accident did not occur within the current boundaries of the Navajo Nation. The evidence before the district court supports this determination.

**{14}** Defendant relies on *Romero* in support of his argument that fee land within the historical boundaries of a reservation is considered to be Indian country. *Romero*, 2006-NMSC-039, ¶ 5. In *Romero*, our Supreme Court held that the state lacked jurisdiction to prosecute crimes committed on privately-owned land within the interior boundaries of the Taos and Pojoaque Pueblos. *Id.* ¶ 26. However, there are two problems with this argument. First, as we have discussed, Defendant made no showing that the accident site was within the historical boundaries of the Navajo Nation. Second, the *Romero* decision was based on the fact that the crimes occurred within the current boundaries of the Taos and Pojoaque Pueblos, rather than the historical boundaries. *Id.* ¶¶ 2, 3 (noting that parties agreed the crimes occurred within the exterior boundaries of the pueblos on private property on non-Indian fee land).

## 2.     Dependent Indian Community

**{15}** Defendant argues that the accident location could be considered a dependent Indian community. To be considered a dependent Indian community under 18 U.S.C. § 1151, land must: (1) have been set aside by the federal government for the use of Indians as Indian land; and (2) be under federal superintendence. *State v. Quintana*, 2008-NMSC-012, ¶ 4, 143 N.M. 535, 178 P.3d 820 (citing *Alaska v. Native Vill. of Venetie Tribal Gov't*, 522 U.S. 520, 527 (1998)). With respect to the first requirement of the *Quintana* test, Defendant argues, "[a]s the land was within the boundaries of the reservation under the original treaty, it was set aside for the use of Indians as Indian land." With respect to the second requirement, Defendant argues that the land "is governed by the Navajo Nation–which as an Indian tribe is under federal superintendence," and therefore, the land is under federal superintendence.

**{16}** As we have held, Defendant failed to demonstrate that the accident location was within the 1868 treaty boundaries of the Navajo Nation. Therefore, the premise for Defendant's argument is incorrect. The Navajo Nation purchased the land at issue and owns

5

it in fee simple. There was no evidence presented to the district court to establish either that the federal government took some explicit action to designate the land as Indian country or that the federal government transferred the property to Indians for use by Indians. *See Quintana*, 2008-NMSC-012, ¶ 6 (stating that to find that the federal government set aside land as Indian country, some explicit congressional or executive action must have been taken).

**{17}** Nor was there evidence to show that the accident location would qualify as a dependent Indian community based on the second requirement of *Quintana*. Federal superintendence requires that an Indian community be sufficiently dependent on the federal government and that the State not exercise primary jurisdiction over the property. *Id.* ¶ 8. Although there was witness testimony that the Navajo Nation provides services to the Baca Chapter and that the Baca Chapter provides services to the community on chapter land, there was no evidence to show that the land at issue was "sufficiently dependent" on the federal government. In fact, the State presented evidence that the Navajo Nation pays taxes for the land to the county, a division of the State. Therefore, Defendant failed to satisfy either requirement under *Quintana*. *See id.* (necessitating both requirements to be met).

**{18}** Given the status of the land as fee land, Defendant might be arguing that we must look at the community located at the accident site as a whole, rather than focusing on the status of certain parcels as trust or fee land. However, this "community of reference" analysis has been specifically rejected by our Supreme Court in *Frank*, 2002-NMSC-026, ¶ 22. The district court did not err in failing to categorize the land at issue as a dependent Indian community.

### 3. Indian Allotment

**{19}** Defendant also argues that the land at issue could be an Indian allotment. *See Hydro Res., Inc.*, 608 F.3d at 1159 (explaining that allotments outside reservations are stray parcels of land that are set aside and subject to superintendence for individual Indians in Indian country even though adjacent parcels are not). Defendant again states, "as it was within the boundaries of the reservation set in 1868, this land was, at some point, an Indian [a]llotment." Defendant alleges, "[w]hen the Navajo Nation purchased the land, the Indian title was restored, if it was ever extinguished." Again, as we discussed earlier in this opinion, Defendant did not present evidence to establish that the site of the accident was ever within the 1868 exterior boundaries of the Navajo Nation or was once an Indian allotment. In addition, Larsen testified that the site was not within the Indian allotments to the north or the south of that area. Finally, Defendant provides no authority for his allegation that the purchase of the land by the Navajo Nation somehow converted the status of the property to that of an Indian allotment. When a party does not cite authority to support an argument, we may assume no such authority exists. *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). The district court also did not err by failing to find that the land at issue fell within an Indian allotment.

## III.    CLERICAL ERROR

**{20}**    In the complaint, Defendant was charged with knowingly leaving the scene of an accident under NMSA 1978, Section 66-7-201(A), (C) (1989).  The plea agreement refers to Section 66-7-201(D), a misdemeanor, on the first page, but the other portions of the  plea agreement clearly refer to the sentence for an offense under Section 66-7-201(C), a third degree felony.  The judgment and sentence refers to Section 66-7-201(B), a fourth degree felony, but imposes a sentence for a third degree felony.  Based on the record, Defendant was charged with, pled guilty to, and received a sentence for a third degree felony under Section 66-7-201(C).  We therefore direct the district court to correct the judgment and sentence to reflect the fact that Defendant entered a plea of guilty to knowingly leaving the scene of an accident under Section 66-7-201(C).

## IV.    CONCLUSION

**{21}**    Defendant failed to establish that the accident occurred within the limits of an Indian reservation, on the site of a dependent Indian community, or on an Indian allotment.  The accident did not occur within Indian country, and the district court properly determined that it had jurisdiction over this case.

**{22}    IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**MICHAEL E. VIGIL, Judge**

**Topic Index for _State v. Vandever_, No. 30,842**

**APPEAL AND ERROR**
Standard of Review

**CRIMINAL LAW**
Driving While Intoxicated
Vehicular Homicide

**INDIAN LAW**
Indian Lands

Tribal and State Authority and Jurisdiction