1997-NMCA-093

945 P.2d 464

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Travis FRANK, Defendant–Appellant.**

No. 16904.

Court of Appeals of New Mexico.

Aug. 28, 1997.

Tom Udall, Attorney General, Ralph E. Trujillo, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

William J. Friedman, Santa Fe, for Defendant–Appellant.

## OPINION

APODACA, Judge.

1. Defendant appeals his convictions on six counts of vehicular homicide. The charges stemmed from a motor vehicle accident that occurred on Highway 44, a state road traversing an area in northwestern New Mexico. Defendant, a registered member of the Navajo Nation or Tribe, moved to dismiss the charges for lack of state court jurisdiction. The district court denied the motion, and Defendant entered an *Alford* plea, *see North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), reserving his right to appeal the jurisdictional question. The sole issue on appeal is whether the accident occurred within the boundaries of a dependent Indian community, and therefore within Indian country, thus depriving the state of jurisdiction to prosecute Defendant of the criminal charges against him. *See Blatchford v. Gonzales,* 100 N.M. 333, 335, 670 P.2d 944, 946 (1983) (implying that exclusive federal jurisdiction applies to areas that are Indian country, as defined by federal statute).

2. We hold that the district court applied incorrect criteria and erred by not making particularized findings in determining whether the accident occurred in Indian country. We thus reverse and remand for additional findings and conclusions. In doing so, we adopt the two-step analysis established in *Pittsburg & Midway Coal Mining Co. v. Watchman,* 52 F.3d 1531 (10th Cir.1995), which we direct the district court to apply on remand in determining whether the accident occurred in Indian country within the meaning of 18 U.S.C. § 1151 (1982).

## I. FACTUAL BACKGROUND

3. Defendant was the driver of a motor vehicle in which his father-in-law was a passenger. The vehicle was involved in an accident that claimed the lives of Defendant's father-in-law and five other persons. The accident occurred in an area known as the checkerboard area, located off the Navajo Reservation and consisting of land owned or administered by the federal government, the State, private non-Indian individuals, Navajo allottees, or the Navajo Nation. The site of the accident is federal land administered by the Bureau of Land Management (BLM land). There was testimony adduced in the district court that it is a violation of federal law to reside on BLM land, so there are no dwellings at the immediate site of the accident. The nearest residences are located approximately two miles away. The BLM land surrounding the accident site is used for grazing purposes only. Both Navajo and non-Indian ranchers are granted permits from the BLM for grazing. The closest commercial establishments are two trading posts located three and one-half to four miles from the accident site. These establishments are owned by non-Indians. The chapter house of the Nageezi Chapter, a political subdivision of the Navajo Nation, is four and one-half miles away from the accident site. Most of the residents in the general area surrounding the accident site are Navajo, and the Nageezi Chapter house provides various social and political services to these residents. Law enforcement in the area is provided in part by Navajo tribal police, the state police, the county sheriff's office and federal BLM rangers.

## II. DISCUSSION

4. We review de novo the district court's application of 18 U.S.C. § 1151(b) to the facts

of this case. *Watchman,* 52 F.3d at 1542. 18 U.S.C. § 1151 provides:

> "Indian country", as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

It is undisputed that the accident did not occur on a reservation or an allotment under Subsections (a) or (c) of Section 1151. Consequently, the sole question we must address is whether the accident occurred within a dependent Indian community under Subsection (b). *See Gonzales,* 100 N.M. at 335, 670 P.2d at 946 (explaining that "Indian country," as defined by federal statute, includes reservations, allotments, and dependent · Indian communities).

5. In *Watchman,* the Tenth Circuit Court of Appeals established a two-step analysis for determining whether an area qualifies as a dependent Indian community. The first step in the analysis is a threshold designation of an appropriate community of reference. *Watchman,* 52 F.3d at 1543. Once a threshold analysis is made, the second step involves the application of a four-prong test to the designated community of reference to determine whether that community is a dependent Indian community. *Id.* at 1545. If the area is a dependent Indian community, then it is considered Indian country under Section 1151, and Defendant would not be subject to prosecution in state court.

6. *Watchman* adopted the Eighth Circuit's four-prong test enunciated in *United States v. South Dakota,* 665 F.2d 837, 839 (8th Cir.1981). In so doing, the Tenth Circuit Court expanded the three-prong test previously articulated in *Blatchford v. Sullivan,* 904 F.2d 542, 545 (10th Cir.1990). The *Sullivan* three-prong test appears as the sec-

ond prong of the *Watchman* test. In considering Defendant's motion to dismiss on jurisdictional grounds, the district court in this appeal relied on the *Sullivan* three-prong test, as did the parties. Because the district court's order denying Defendant's motion to dismiss was entered before *Watchman* was decided, neither the district court nor the parties had the benefit of the test adopted in *Watchman.* On appeal, both parties now acknowledge the *Watchman* two-step analysis and argue its applicability to the facts of this case. We agree with the parties that the four-prong test enunciated in *Watchman* is the appropriate method to use in determining whether the area designated as a community of reference is a dependent Indian community. We nevertheless decline the State's suggestion that we, as a reviewing court, should now proceed to apply the *Watchman* two-step analysis to the facts previously adduced at the hearing on Defendant's motion to dismiss and to affirm the district court on that basis. Because the district court did not have the benefit of *Watchman*'s two-step analysis, which we now adopt as law in New Mexico, the court did not enter findings and conclusions with the specificity that we believe is required under *Watchman.* We therefore believe that a remand is proper for the entry of particularized findings and conclusions based on our adoption of *Watchman*'s two-part analysis. We now review that analysis.

## A. Community Of Reference

7. The district court must first answer the threshold question of whether the area proposed as a dependent Indian community is appropriate as a community of reference. *United States v. Adair,* 111 F.3d 770, 774 (10th Cir.1997); *see also Watchman* 52 F.3d at 1543. Although there are no actual findings that expressly so state, it appears to us from our review of the limited findings and conclusions the district court did enter that the court used the accident site, in isolation, as the community of reference. In so doing, the court apparently did not consider the surrounding area.

■ 8. We believe that this limited view of the accident site as the community of

reference was error and did not follow the case law that requires a broader view of the community of reference. *See, e.g., United States v. Mission Golf Course, Inc.,* 548 F.Supp. 1177 (D.S.D.1982) (mem.), *aff'd without opinion,* 716 F.2d 907 (8th Cir.1983) (looking at territory surrounding golf course in determining whether golf course was non-Indian community). "The resolution of this [community-of-reference] issue involves substantial factual determinations, making the district court the appropriate forum for its initial consideration." *Watchman,* 52 F.3d at 1545. For these reasons, we conclude that remand is necessary for the entry of conclusions of law specifically identifying an appropriate community of reference and the entry of detailed findings supporting those conclusions.

■ 9. As guidance to the district court on remand, we review the two principles noted in *Watchman* for determining the proper community of reference. The two guiding principles are: "(1) 'the status of the area in question as a community' and (2) consideration of that locale or 'community of reference within the context of the surrounding area.'" *Adair,* 111 F.3d at 774 (quoting *Watchman,* 52 F.3d at 1543–44). Defendant argues that the Nageezi Chapter house is the appropriate community of reference. "If an area such as [the Nageezi Chapter] does not emerge from this threshold evaluation as a community of reference, it necessarily cannot constitute a dependent Indian community." *Adair,* 111 F.3d at 774. In other words, if the area proposed as a dependent Indian community is not appropriate as a community of reference, the analysis ends and application of the *Watchman* four-prong test need not be undertaken. *Id.* at 775 (stating that if area proposed is not a community, it "cannot be a community of reference for testing the presence of a dependent Indian community").

■ 10. The status of the area as a community is determined by looking at the extent to which the defining characteristics of a community predominate.

> Basic to the definitions of "community" [that] we have reviewed is the existence of an element of cohesiveness. This apparently can be manifested either by economic

pursuits in the area, common interests, or needs of the inhabitants as supplied by that locality. Cohesiveness or common interests can be more necessary to the existence of a community than can mere density of population.

*Watchman,* 52 F.3d at 1544 (quoting *United States v. Morgan,* 614 F.2d 166, 170 (8th Cir.1980)). Community is also defined as "a mini-society consisting of personal residences and an infrastructure potentially including religious and cultural institutions, schools, emergency services, public utilities, groceries, shops, restaurants, and the other needs, necessities, and wants of modern life." *Id.* Because the accident site in this case was a state highway, however, the site itself does not contain any of this infrastructure. For this reason, it is necessary to consider the principle that "focuses on the community of reference within the context of the surrounding area." *Id.* In determining the appropriate community of reference, courts must look not only to the specific site in question, but should also consider the surrounding area. *See Berry v. Arapahoe & Shoshone Tribes,* 420 F.Supp. 934, 940 (D.Wyo.1976) (looking at surrounding communities within five to thirty mile radius that provided necessary services for lodge); *United States v. Mazurie,* 419 U.S. 544, 551–52, 95 S.Ct. 710, 715, 42 L.Ed.2d 706 (1975) (considering thirty-mile radius).

11. In *Adair,* the Tenth Circuit also looked at the geographical definition of the area proposed as a community. *Adair,* 111 F.3d at 774. The court examined whether the proposed area had any discernible boundaries, indicating that absent some form of objective boundaries, a proposed area "lacks [the] defining credentials [of] a community." *Id.*

## B. Dependent Indian Community

12. Once an appropriate community of reference is established, the district court must apply the *Watchman* four-prong test to determine if the community established is a dependent Indian community. We instruct the district court to proceed with this second step of the analysis, even if it concludes that the area proposed is not an appropriate com-

munity of reference. Doing so would assist this Court in reviewing the district court's determination on remand, in the event the case is appealed again to our Court. *See Adair*, 111 F.3d at 775–77 (holding that Rocky Mountain area was not an appropriate community of reference; assuming that the area was an appropriate community of reference, holding that it failed to qualify as a dependent Indian community under the *Watchman* four-prong test).

■ 13. The *Watchman* four-prong test is as follows:

> [W]hether a particular geographical area is a dependent Indian community depends on a consideration of several factors. These include: (1) whether the United States has retained "title to the lands which it permits the Indians to occupy" and "authority to enact regulations and protective laws respecting this territory[ ]"; (2) "the nature of the area in question, the relationship of the inhabitants in the area to Indian tribes and to the federal government, and the established practice of government agencies toward the area[ ]"; (3) whether there is "an element of cohesiveness ... manifested either by economic pursuits in the area, common interests, or needs of the inhabitants as supplied by that locality[ ]"; and (4) "whether such lands have been set apart for the use, occupancy and protection of dependent Indian peoples."

*Watchman*, 52 F.3d at 1545 (citations omitted).

14. The district court in this case did not make findings concerning the additional factors adopted in *Watchman*. Because fact-finding is the province of the district court, we remand to the district court with instructions to make particularized findings on each of the four prongs of the *Watchman* test and to determine, based on these findings, whether the accident site is within a dependent Indian community. *See State ex rel. Human Servs. Dep't v. Coleman*, 104 N.M. 500, 505, 723 P.2d 971, 976 (Ct.App.1986) ("Where doubt or ambiguity exists as to whether the trial court considered relevant evidence, or where other findings are required, the ends of justice require that the cause be remanded to the district court for the entry of additional findings and conclusions of law.").

## III. CONCLUSION

15. We reverse and remand to the district court for an evidentiary hearing on two questions. Initially, the district court must designate an appropriate community of reference (not necessarily limited to the accident site) for its dependent-Indian-community analysis. Next, the district court must apply the *Watchman* four-prong test to that community of reference to determine if the accident occurred within a dependent Indian community. If, after applying these factors, the district court concludes that the accident occurred within a dependent Indian community, Defendant's convictions must be reversed and the district court shall enter an order vacating its judgment and sentence and dismissing the criminal charges against Defendant. If, on the other hand, the district court determines that the accident did not occur within a dependent Indian community, then the convictions will stand and the judgment and sentence will be affirmed. We note that this Court's review of this jurisdictional question, should there be an appeal after remand, would be substantially assisted by the entry of specific and detailed findings in support of the district court's determination on both the community-of-reference threshold question and the *Watchman* four-prong test.

16. **IT IS SO ORDERED.**

HARTZ, C.J., and WECHSLER, J., concur.