2002-NMSC-026

52 P.3d 404

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Travis FRANK, Defendant–Respondent.**

**No. 26,907.**

Supreme Court of New Mexico.

July 24, 2002.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, NM, for Petitioner.

Phyllis H. Subin, Chief Public Defender, Laurel A. Knowles, Assistant Appellate Defender, Santa Fe, NM, for Respondent.

Levon B. Henry, Attorney General, Marcelino R. Gomez, Assistant Attorney General, Donovan D. Brown, Sr., Acting Chief Prosecutor, Window Rock, AZ, for Amicus Curiae, Navajo Nation.

## OPINION

FRANCHINI, Justice.

{1} Defendant Travis Frank entered a conditional plea of guilty to six counts of vehicular homicide, contrary to NMSA 1978, § 66–8–101(A) (1991), reserving for appeal the issue of the State's jurisdiction to prosecute the case. Defendant, a registered member of the Navajo nation, had unsuccessfully challenged the State's jurisdiction to prosecute him in a motion to dismiss. In his first appeal, *State v. Frank*, 1997–NMCA–093, ¶ 1, 123 N.M. 734, 945 P.2d 464 (hereinafter *Frank I* ), Defendant challenged the findings of fact and conclusions of law reached by the district court in denying Defendant's motion to dismiss. Defendant argued that "the accident occurred within the boundaries of a dependent Indian community, . . . thus depriving the state of jurisdiction to prosecute Defendant of the criminal charges against

him." *Id.* The Court of Appeals in *Frank I* reversed and remanded the case for the district court to make additional findings, applying the analysis from *Pittsburg & Midway Coal Mining Co. v. Watchman,* 52 F.3d 1531 (10th Cir.1995). *Frank,* 1997–NMCA–093, ¶ 2, 123 N.M. 734, 945 P.2d 464.

{2} Before the district court could follow the mandate of the Court of Appeals, the United States Supreme Court established a test for determining what constitutes a dependent Indian community. *See Alaska v. Native Village of Venetie Tribal Gov't,* 522 U.S. 520, 527, 118 S.Ct. 948, 140 L.Ed.2d 30 (1998). The district court, concluding that the Supreme Court decision superseded the previous law articulated in *Watchman,* applied the two-prong test articulated in *Venetie.* The district court based its findings of fact and conclusions of law upon the *Venetie* holding and determined that the State had jurisdiction. Defendant appealed again from the district court ruling. *State v. Frank,* 2001–NMCA–026, 130 N.M. 306, 24 P.3d 338, *cert. granted,* No. 26,907, 130 N.M. 254, 23 P.3d 929 (2001) (hereinafter *Frank II* ). In a divided opinion, the Court of Appeals held that the district court had erred because it had not applied the correct criteria in determining jurisdiction and reversed and remanded for additional findings and conclusions. *Id.* ¶ 2. The State appealed, petitioning this Court to issue a writ of certiorari to the Court of Appeals under NMSA 1978, § 34–5–14(B) (1972), which we granted. We reverse the Court of Appeals and affirm the district court.

## I. FACTS AND PROCEDURE

{3} On May 21, 1994, Defendant was driving a motor vehicle in which his father-in-law was the only passenger. *Frank,* 1997–NMCA–093, ¶ 3, 123 N.M. 734, 945 P.2d 464. Defendant caused a serious accident that killed his father-in-law and five passengers in the other car. *Id.* Defendant was indicted by a grand jury of six counts of vehicular homicide; speeding; failure to carry proof of financial responsibility; and five counts of assault with a deadly weapon.

{4} The accident occurred on New Mexico State Highway 44 at mile post 119.8. High-

way 44 is a state road that runs through a checkerboard area, "so-called because of its pattern of land owned or administered by the federal government, the Navajo Nation, Navajo allottees, the state, and private non-Indians." *Frank,* 2001–NMCA–026, ¶ 4, 130 N.M. 306, 24 P.3d 338. The land on which the accident occurred is owned by the federal government and administered by the Bureau of Land Management. *Id.* The district court denied Defendant's motion to dismiss for lack of jurisdiction and concluded that the area where the crash occurred is not Indian country as defined by 18 U.S.C. § 1151 (2000) and *Blatchford v. Sullivan,* 904 F.2d 542 (10th Cir.1990).

{5} On March 20, 1995, Defendant pleaded guilty to all six counts of vehicular homicide. Defendant specifically reserved in the plea and disposition agreement the right to appeal whether the State had jurisdiction to prosecute. In October of 1995, the district court sentenced Defendant to twenty-four years in prison adding one year to each count for aggravating circumstances. *See* NMSA 1978, § 31–18–15.1(A) (1993).

### A. Frank I

{6} Defendant appealed his conviction to the Court of Appeals arguing that the state court lacked jurisdiction. *Frank,* 1997–NMCA–093, ¶ 1, 123 N.M. 734, 945 P.2d 464. The sole issue on appeal was whether the accident occurred within the boundaries of a dependent Indian community, and therefore within Indian country. *Id.* To determine whether the accident occurred in a dependent Indian community, the Court of Appeals examined the multi-factor test established in *Watchman. Id.* ¶ 5. The Court of Appeals ultimately reversed and remanded the case, mandating that the district court apply the *Watchman* test. *Id.* ¶ 15.

{7} After the case was remanded, but before the district court re-analyzed the jurisdiction issue, the Supreme Court decided *Venetie.* The *Venetie* decision established a two-prong test requiring courts to determine if the land at issue was federally set-aside for the use of Indians as Indian lands and was also under federal superintendence. *Venetie,* 522 U.S. at 527, 118 S.Ct. 948. The district

court concluded that the Supreme Court decision superseded any previous law on the matter and therefore applied the *Venetie* analysis rather than the *Watchman* analysis. *Frank*, 2001–NMCA–026, ¶ 6, 130 N.M. 306, 24 P.3d 338. The district court issued findings of fact and conclusions of law in which the court concluded that the accident did not occur in a dependent Indian community and that the State had jurisdiction over the matter. *Id.* ¶ 4.

### B. Frank II

{8} Defendant appealed his conviction again and raised the following arguments: "(1) the district court did not follow the mandate of [the Court of Appeals] in the first appeal of the case because it did not use the two-step analysis ordered in *Frank [I]*; (2) the district court's findings of fact are insufficient for it to have analyzed the jurisdiction issue under *Venetie* as applied in the Tenth Circuit; and (3) the area in question is a 'dependent Indian community' as defined by 18 U.S.C. § 1151, as a matter of law." *Frank*, 2001–NMCA–026, ¶ 3, 130 N.M. 306, 24 P.3d 338. The Court of Appeals determined that the district court erred because the district court did not first examine the community of reference question before applying the *Venetie* test. *Id.* ¶ 2.

## II. DISCUSSION

{9} The State argues that it was proper for the district court to have used the *Venetie* test and that the district court correctly determined the site of the accident was not in Indian country. The State reasons that the majority opinion of the Court of Appeals erred when it rejected the district court's findings and conclusions in *Frank II* and remanded for the district court to find a community of reference. As the Court of Appeals in *Frank II* correctly observed, the *Venetie* decision "is a controlling interpretation of federal law." *Frank*, 2001–NMCA–026, ¶ 6, 130 N.M. 306, 24 P.3d 338. We agree that the Court of Appeals erred when it required the district court to first examine the community of reference as a threshold inquiry before applying the test in *Venetie*.

{10} "The appropriate standard for review on appeal is whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party." *State v. Boeglin*, 100 N.M. 127, 132, 666 P.2d 1274, 1279 (Ct.App.1983). In reviewing a district court's findings of fact, we "defer to the [district] court's determinations of fact if such findings are supported by substantial evidence." *State v. Dick*, 1999–NMCA–062, ¶ 7, 127 N.M. 382, 981 P.2d 796. "As to matters of law, [a reviewing court] conducts a de novo review." *Id.* In the present case, we review de novo the district court's application of *Venetie* to the facts.

{11} The district court had conducted an evidentiary hearing on the motion to dismiss and subsequently issued the findings of fact and conclusions of law that were reviewed by the Court of Appeals in *Frank I*. Defendant did not dispute the site of the collision and acknowledged that the location was on a state highway on land owned by the Bureau of Land Management. After the remand hearing, the court issued additional findings of fact and conclusions of law in which the court incorporated by reference the findings from the first hearing. The district court found that "[n]o evidence was produced indicating that the area in question was set aside by the Federal Government for the exclusive use of Indians." The court also found that the land in question was administered by the Bureau of Land Management. It then concluded that, under the two-prong analysis required by *Venetie*, "the area in which the crash occurred is not Indian country as defined by 18 U.S.C. § 1151." After careful review of the matter, we have determined that the findings of fact were supported by substantial evidence and the conclusions of law were correct applications of the law to the facts. The district court properly addressed each element of the *Venetie* test in arriving at its conclusions.

### A. Dependent Indian Country

{12} As a general principle, a state does not have jurisdiction over crimes committed by an Indian in Indian country. *Dick*, 1999–NMCA–062, ¶ 8, 127 N.M. 382, 981 P.2d 796. In the present case, because the acci-

dent did not occur on an Indian reservation or allotment, whether the accident occurred in Indian country depends on whether the accident occurred in a dependent Indian community pursuant to 18 U.S.C. § 1151(b). *Frank,* 1997–NMCA–093, ¶ 4, 123 N.M. 734, 945 P.2d 464 .

{13} In 1948, Congress passed 18 U.S.C. § 1151 which defined Indian country as:

> (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

The Supreme Court did not interpret the term "dependent Indian communities" until 1998 when the Court decided *Venetie*. *Venetie,* 522 U.S. at 527, 118 S.Ct. 948. Before the *Venetie* decision, lower courts employed various tests in defining the term "dependent Indian communities." *See Dick,* 1999–NMCA–062, ¶¶ 11–12, 127 N.M. 382, 981 P.2d 796; *Thompson v. County of Franklin,* 127 F.Supp.2d 145, 152–53 (N.D.N.Y.2000)(describing tests).

**B. Case Law Before *Venetie***

{14} In 1990, the Tenth Circuit, reviewing a petition for writ of habeas corpus, analyzed whether the State had jurisdiction to prosecute a Navajo Indian who had been convicted of felony crimes in state court. *Blatchford,* 904 F.2d at 544. The issue in *Blatchford* was whether the offenses were committed within a dependent Indian community. The district court considered the land title; community composition and purpose; and the relationship of the community to the federal government and the Navajo nation, as well as to the state and county government, in determining that the land in question was not within a dependent Indian community. *Id.* at 548. The Tenth Circuit agreed with the district

court's analysis and held that, even though the community was populated primarily by Indians, the land in question was not within the Navajo Reservation and was not a dependent Indian community for purposes of the Federal Major Crimes Act, 18 U.S.C. § 1153. *Id.* at 549.

{15} In 1995, the Tenth Circuit established a multi-part test to determine what constitutes a dependent Indian community. *Watchman,* 52 F.3d at 1543–45. In *Watchman,* the Pittsburgh & Midway Coal Mining Company filed an action in federal court seeking an injunction and declaratory judgment that the Navajo nation lacked jurisdiction to impose its business activities tax on the "source gains" from one of its mines. *Id.* at 1534. The court established a multi-part test to determine whether certain land was within dependent Indian communities. *Id.* at 1543–45. The first part of the test required a determination of a proper community of reference. *Id.* at 1543–44. In determining a community of reference, a court should look to: (1) the status of the area in question as a community and (2) the relationship of the area in question to the surrounding area. *Id.* The *Watchman* court adopted the following four-part test as the second step in determining what constitutes a dependent Indian community:

> (1) whether the United States has retained title to the lands which it permits the Indians to occupy and authority to enact regulations and protective laws respecting this territory; (2) the nature of the area in question, the relationship of the inhabitants in the area to Indian tribes and to the federal government, and the established practice of government agencies toward the area; (3) whether there is an element of cohesiveness ... manifested either by economic pursuits in the area, common interests, or needs of the inhabitants as supplied by that locality; and (4) whether such lands have been set apart for the use, occupancy and protection of dependent Indian peoples.

*Id.* at 1545 (internal quotations and punctuation omitted).

## C. *Venetie*

{16} In 1998, the Supreme Court granted certiorari on the issue and established a two-prong test for defining dependent Indian communities. *Venetie,* 522 U.S. at 527, 118 S.Ct. 948. The Court in *Venetie* held that the term "dependent Indian communities" referred "to a limited category of Indian lands that are neither reservations nor allotments, and that satisfy two requirements—first, they must have been set aside by the Federal Government for the use of the Indians as Indian land; second, they must be under federal superintendence." *Id.* In so holding, the Supreme Court disapproved of a six-factor balancing test that the court below had used to resolve the Indian country question. *Id.* at 531 n. 7, 118 S.Ct. 948. The Court stated that the six-factor test had "reduced the federal set-aside and superintendence requirements to mere considerations," rather than being determinative factors. *Id.* It concluded that these determinative factors were reflected in the text of 18 U.S.C. § 1151 and in the Court's case law that preceded the enactment of the statute. *Id.* at 530–31, 118 S.Ct. 948. The Court reaffirmed that "our Indian country precedents . . . indicate both that the Federal Government must take some action setting apart the land for the use of the Indians 'as such,' and that it is *the land in question,* and not merely the Indian tribe inhabiting it, that must be under the superintendence of the Federal Government." *Id.* at 531 n. 5, 118 S.Ct. 948; *see United States v. McGowan,* 302 U.S. 535, 539, 58 S.Ct. 286, 82 L.Ed. 410 (1938); *United States v. Pelican,* 232 U.S. 442, 449, 34 S.Ct. 396, 58 L.Ed. 676 (1914); *United States v. Sandoval,* 231 U.S. 28, 46, 34 S.Ct. 1, 58 L.Ed. 107 (1913).

{17} In *Venetie,* the Supreme Court stated that although the definition for dependent Indian communities in 18 U.S.C. § 1151, "by its terms relates only to federal criminal jurisdiction, we have recognized that it also generally applies to questions of civil jurisdiction." *Venetie,* 522 U.S. at 527, 118 S.Ct. 948; *accord Blatchford,* 904 F.2d at 543 (observing that regardless of whether a case is criminal or civil, resolving whether land is in Indian county is the same legal issue). The

test established in *Venetie* has subsequently been used to resolve questions of jurisdiction related to Indian country in both civil and criminal cases. *See, e.g., United States v. Roberts,* 185 F.3d 1125, 1132–33 (10th Cir. 1999), *cert. denied,* 529 U.S. 1108, 120 S.Ct. 1960, 146 L.Ed.2d 792 (2000) (applying the *Venetie* two-prong test in a criminal case); *Blunk v. Ariz. Dep't of Transp.,* 177 F.3d 879, 883–84 (9th Cir.1999) (applying the *Venetie* two-prong test in a civil case); *Thompson,* 127 F.Supp.2d at 156–58 (civil case); *Malabed v. N. Slope Borough,* 42 F.Supp.2d 927, 932–33 (D.Alaska 1999) (civil case).

## D. Case Law After *Venetie*

{18} The Tenth Circuit has had two occasions to apply the test articulated in *Venetie. See HRI, Inc. v. Envtl. Prot. Agency,* 198 F.3d 1224 (10th Cir.2000); *Roberts,* 185 F.3d at 1132–33. In *Roberts,* the court relied on the *Venetie* test to determine whether certain criminal offenses occurred in Indian County. *Id.* at 1132–33. The court held that the property was Indian country because it "was validly set-aside for the tribe under the superintendence of the federal government." *Id.* at 1133. In *HRI,* the Tenth Circuit relied on *Venetie* to determine whether two tracts of land were Indian country. *HRI,* 198 F.3d at 1248–54. Although the court discussed the application of *Venetie* in determining whether one of the two tracts of land was Indian country, it concluded that the ultimate merits of the dispute were not ripe for resolution. *Id.* at 1248. As for the other tract of land, the court used the *Venetie* analysis to determine that it was Indian country under Section 1151(a) and possibly Indian country under Section 1151(b). *Id.* at 1254. The *HRI* court, however, decided not to "delve into potentially difficult questions regarding the impact of *Venetie* on the *Watchman* analysis." *Id.* In dicta, the Court stated that *Venetie* did not have the opportunity to address a proper community of reference and that "barring en banc review by this court, *Watchman* continues to require a 'community of reference' analysis prior to determining whether land qualifies as a dependent Indian community under the set-aside and supervision requirements of 18 U.S.C. § 1151(b)." *Id.* at 1249 (citation omitted).

{19} In New Mexico, the Court of Appeals applied the *Venetie* two-prong test to determine whether the State had jurisdiction to try the defendant for DWI. *Dick*, 1999–NMCA–062, ¶ 28, 127 N.M. 382, 981 P.2d 796. The Court noted that the Supreme Court disapproved of the Ninth Circuit's six-factor test which essentially used the same factors in *Watchman*. *Id.* ¶ 12. It observed that the first prong of *Venetie* could be seen as precluding the need for a community of reference test. *Id.* ¶ 14. Furthermore, it reasoned that under *Venetie*, "[t]he federal set-aside requirement ensures that the land in question is occupied by an 'Indian community.' " *Id.* ¶ 17 (quoting *Venetie*, 522 U.S. at 531, 118 S.Ct. 948). The Court applied *Venetie's* two-prong test and concluded that the area of land in question satisfied the test for a dependent Indian community under *Venetie*. *Id.* ¶ 28.

{20} The *Watchman* test basically consolidates three of the factors in the Ninth Circuit six-factor test into one. *Compare Watchman*, 52 F.3d at 1545 (factor two requiring courts to analyze "the nature of the area in question, the relationship of the inhabitants in the area to Indian tribes and to the federal government, and the established practice of government agencies toward the area"), *with Venetie*, 522 U.S. at 525–6, 118 S.Ct. 948 (three factors requiring courts to analyze (1) "the nature of the area," (2) "the relationship of the area inhabitants to Indian tribes and the federal government," and (3) "the established practice of government agencies toward that area"). We agree with *Dick's* analysis that the six-factor test that was rejected by the Supreme Court in *Venetie* used essentially the same factors as those in *Watchman*.

{21} Before the Court of Appeals adopted the *Watchman* test in *Frank I*, our courts had held that "[t]he principal test for determining whether a tract of land is 'Indian country' within the meaning of Subsection 1151(a) for the purposes of the Major Crimes Act is whether the land in question has been validly set apart for the use of Indians as such, under the superintendence of the United States government." *State v. Ortiz*, 105 N.M. 308, 310, 731 P.2d 1352, 1354 (Ct.App.

1986) (recognizing that the New Mexico Supreme Court "has observed that the terms of Section 1151(a) largely overlap with the terms of Section 1151(b)"); *Blatchford v. Gonzales*, 100 N.M. 333, 336, 670 P.2d 944, 947 (1983) ("The crucial consideration, however, is whether the community or land has been *set apart* for use, occupancy and protection of dependent Indian peoples.") (relying upon *McGowan*, 302 U.S. at 539, 58 S.Ct. 286). Even when the *Watchman* court established that a community of reference inquiry was necessary, it acknowledged that "[a]ll other courts that have addressed a dependent Indian community issue have done so without having to answer the threshold question of the appropriate community to use." *Watchman*, 52 F.3d at 1543. The *Venetie* two-prong test redirects "our attention to land and its title and away from the more nebulous issue of community cohesiveness." *Frank*, 2001–NMCA–026, ¶ 38, 130 N.M. 306, 24 P.3d 338 (Bosson, J., dissenting).

{22} In concluding that the district court must still define a community of reference, the Court of Appeals' majority relied on dicta in *HRI*. *Frank*, 2001–NMCA–026, ¶ 11, 130 N.M. 306, 24 P.3d 338. As the dissent in *Frank II* correctly states, our courts are not required to adopt the reasoning of the Tenth Circuit. *Id.* ¶ 44. In light of the clear guidelines in the *Venetie* opinion, we decline to incorporate a community of reference inquiry into our case law. We agree with the dissent that the majority opinion erred in requiring a community of reference threshold inquiry.

## III. CONCLUSION

■ {23} Based on the foregoing, we reverse the Court of Appeals and affirm the determination of the district court that the State has jurisdiction in this matter. We adopt the two-prong test adopted in *Venetie* to resolve questions of Indian jurisdiction in civil and criminal cases; therefore, no examination of the community of reference is required before applying the two-prong test established in *Venetie*.

{24} **IT IS SO ORDERED.**

**550**

WE CONCUR: PATRICIO M. SERNA, Chief Justice, JOSEPH F. BACA, and PETRA JIMENEZ MAES, Justices.

PAMELA B. MINZNER, Justice (dissenting).

MINZNER, Justice (dissenting).

{25} I respectfully dissent. I would affirm the decision of the Court of Appeals to remand this matter to the district court for further proceedings. I believe that the Court of Appeals majority correctly perceived difficulties in applying *Alaska v. Native Vill. of Venetie Tribal Gov't*, 522 U.S. 520, 118 S.Ct. 948, 140 L.Ed.2d 30 (1998), to the facts of this case and wisely elected to exercise caution in departing from Tenth Circuit precedent. I suspect that its perception of difficulties in applying *Venetie* arose from a concern that the test applied in that case might require some modification when applied in other situations. I think members of the Tenth Circuit Court of Appeals share that concern.

{26} The Tenth Circuit made clear in *HRI, Inc. v. Environmental Protection Agency*, 198 F.3d 1224 (10th Cir.2000), that federal courts in this circuit must, even after *Venetie*, still apply a community of reference analysis in determining whether a particular location is a dependent Indian community under 18 U.S.C. § 1151(b) (2000). In *HRI*, the court stated,

> Presumably because of the categorical effect of the Alaska Native Claims Settlement Act ("ANSCA") on virtually all Alaskan native lands, the Supreme Court in *Venetie* was not even presented with the question of defining the proper means of determining a community of reference for analysis under § 1151(b).
>
> Because *Venetie* does not speak directly to the issue, barring en banc review by this court, [*Pittsburg & Midway Coal Mining Co. v. Watchman*, 52 F.3d 1531 (10th Cir. 1995)] continues to require a "community of reference" analysis prior to determining whether land qualifies as a dependent Indian community under the set-aside and su-

pervision requirements of 18 U.S.C. § 1151(b).

198 F.3d at 1249 (citation omitted).

{27} I agree with my colleagues that we are free to reject the analysis of the Tenth Circuit, even when we interpret federal law. The fact that we may do so, of course, does not necessarily mean that we should.

{28} The history of Indian country in Alaska and the exercise of jurisdiction over criminal offenses and civil causes of action within Indian country in that state seems to have been unique. *See generally Felix S. Cohen's Handbook of Federal Indian Law* 763–67 (Rennard Strickland et al. eds., 1982 ed.) (discussing the extension of state law over criminal offenses and civil causes of action in Indian country within Alaska). In this state the jurisdictional issues are more complicated. *See State v. Frank*, 2001–NMCA–026, ¶¶ 16–17, 130 N.M. 306, 24 P.3d 338 (describing the purpose of determining "an appropriate community of reference").

{29} I think the Court of Appeals majority was attempting to ensure that facts that might distinguish circumstances in New Mexico from those in Alaska were not overlooked. The judges in the majority were not prepared to say that any differences would be irrelevant. I also think those judges foresaw that after conviction in state court a prisoner would pursue any federal post-conviction remedies within the Tenth Circuit. The judges in the majority seem to have reasoned that following Tenth Circuit precedent in criminal cases would reduce the potential for jurisdictional conflicts. If *Venetie* does require some modification of the Tenth Circuit's analysis, reducing that potential in the interim seems a desirable goal.

{30} On balance, I think the Court of Appeals majority had the better view. A majority of this Court concluding otherwise, I respectfully dissent.