2008-NMCA-025

178 P.3d 823

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**James B. QUINTANA, Defendant–Appellee.**

**No. 25,107.**

Court of Appeals of New Mexico.

June 15, 2006.

Certiorari Granted, No. 29,909, Aug. 25, 2006.

Patricia A. Madrid, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, NM, for Appellant.

John Bigelow, Chief Public Defender, Laurel A. Knowles, Assistant Appellate Defender, Santa Fe, NM, for Appellee.

## OPINION

VIGIL, Judge.

{1} The district court concluded that the traffic accident giving rise to the crimes alleged in the indictment occurred in Indian country, and dismissed the indictment for lack of subject matter jurisdiction. The State appeals, arguing that the accident site was not in Indian country. We agree with the State and reverse the order dismissing the indictment.

## Background

{2} The following facts are undisputed. Defendant is an enrolled member of Cochiti Pueblo who was involved in a motor vehicle accident on State Road 16 in 1999. State Road 16 is built on land belonging to the federal government and administered by the United States Forest Service as part of the Santa Fe National Forest, In 1983, the United States Forest Service granted an easement to the New Mexico Highway Department to build State Road 16. State Road 16 itself is the boundary between two pueblos. Santo Domingo Pueblo is on one side of State Road 16, and Cochiti Pueblo is on the other. The site of the accident is not within the boundaries of either pueblo, and the accident did not occur on land held in trust for a pueblo. The actual accident site was .45 tenths of a mile southeast of the southern boundary of the Cochiti Pueblo Grant. As a result of the accident, Defendant was indicted in district court on three counts of homicide by vehicle by reckless driving and one count of great bodily injury by vehicle by reckless driving. Defendant moved to dismiss the complaint for lack of jurisdiction.

{3} The district court held an evidentiary hearing, and the evidence presented included maps of State Road 16 and the surrounding lands and photographs of the accident site. The district court found the "[c]ommunity of reference to be Cochiti Pueblo, Santo Domingo Pueblo, and Pena Blanca." It also found that the "[c]ommunity of reference is a federal set aside for dependent Indian people and is under federal superintendence." It then dismissed the charges against Defendant for lack of jurisdiction in district court, and the State appealed.

{4} This Court reversed in a memorandum opinion and instructed the district court to apply the two-prong test set forth in *Alaska v. Native Village of Venetie Tribal Government*, 522 U.S. 520, 527, 118 S.Ct. 948, 140 L.Ed.2d 30 (1998) (hereinafter *Venetie* ), that was adopted by our Supreme Court in *State v. Frank*, 2002–NMSC–026, ¶ 23, 132 N.M. 544, 52 P.3d 404. After both parties submitted supplemental pleadings, the district court held a second evidentiary hearing, and the evidence presented again included maps and photographs of the areas surrounding the accident site. The district court again found that the portion of State Road 16 where the accident occurred is Indian country. The court found that the site qualifies as a dependent Indian community because: (1) it was set aside by the federal government for use of the Indians of Cochiti Pueblo; and (2) it is under federal superintendence. This appeal followed.

## Standard of Review

{5} We review whether the law was correctly applied to the facts, viewing the facts in the light most favorable to the prevailing party. *Id.* ¶ 10. We defer to the district court's findings of fact if they are supported by substantial evidence. *Id.; see State v. Dick*, 127 N.M. 382, 384, 981 P.2d 796, 798(1999). As to matters of law, we conduct a de novo review. *Id.* In this case, "we review de novo the district court's application

of *Venetie* to the facts." *Frank*, 2002–NMSC–026, ¶ 10, 132 N.M. 544, 52 P.3d 404.

**Discussion**

■ {6} In general, "a state does not have jurisdiction over crimes committed by an Indian in Indian Country." *Id.* ¶ 12; *see State v. Romero*, 2004–NMCA–012, ¶ 8, 135 N.M. 53, 84 P.3d 670 ("Under federal law, the United States has exclusive jurisdiction to prosecute certain serious offenses committed by Indians within Indian country."), *cert. granted*, 2004–NMCERT–001, 135 N.M. 161, 85 P.3d 803. The parties do not dispute that Defendant is an enrolled member of Cochiti Pueblo and that the victims were all Native Americans. Further, there is no dispute that the offenses charged constitute serious offenses for federal jurisdictional purposes. *See* 18 U.S.C. § 1153(a) (2000). The issue on appeal is whether the district court correctly determined that the accident occurred within "Indian country." *See Dick*, 127 N.M. at 384, 981 P.2d at 798.

{7} Congress has defined "Indian country" in 18 U.S.C. § 1151 (2000) as:

(a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States ..., and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

The parties agree that the site of the accident is not within the exterior boundaries of Cochiti Pueblo, Santo Domingo Pueblo, or any other pueblo. They further agree that if the land in question is Indian country, it must qualify as a "dependant Indian community" pursuant to 18 U.S.C. § 1151(b).

■ {8} To resolve the question of whether the accident site is within a dependent Indian community, we apply the two-prong test set forth in *Venetie*. *See Frank*, 2002–NMSC–026, ¶ 23, 132 N.M. 544, 52 P.3d 404. Under the two-prong test, the land in question must: (1) " 'have been set aside by the Federal Government for the use of the Indi-

ans as Indian land' "; and (2) " 'be under federal superintendence.' " *Id.* ¶ 16 (quoting *Venetie*, 522 U.S. at 527, 118 S.Ct. 948).

**Set-aside**

■ {9} The district court found that the site of the accident was on land "set aside by the Federal Government for the use of the Indians of Cochiti Pueblo." This finding is not supported by substantial evidence.

■ {10} To determine whether there is a set-aside, we first look to the title of the land in question because the link between title and status as Indian country has been previously recognized by this Court. *See Romero*, 2004–NMCA–012, ¶ 21, 135 N.M. 53, 84 P.3d 670 (concluding that "Congress intended Subsection 1151(b) to maintain the linkage between Pueblo title and status as Indian country"). Even though the land abutting State Road 16 belongs to either Cochiti Pueblo or Santo Domingo Pueblo, the strip of National Forest land that became State Road 16 is federally owned and administered. There is no evidence that this land is owned by or held in trust for the benefit of any Indian tribe or pueblo.

{11} Even though the accident site is on land that was never granted to or held in trust for any Indian tribe or pueblo, Defendant argues that the set-aside requirement is satisfied because it is not necessary for the federal government to set aside the land for the exclusive use of Indians. He contends that land can be set aside even if non-Indians are granted rights-of-way on the land. However, there is no evidence in this case that the federal government ever set aside this land for the benefit of Indians, exclusive or otherwise. In the absence of any showing that the accident site had previously been granted to, held in trust for, or title recognized in, any Indian tribe or pueblo, there is no support for the finding that the land in question has been set-aside for purposes of satisfying *Venetie*. *See United States v. M.C.*, 311 F.Supp.2d 1281, 1295 (D.N.M.2004) (holding that the land in question did not meet the federal set-aside requirement and recognizing that "there has never been a finding of a dependent Indian community

unless the community at issue was located on tribal lands or land held in trust for Native Americans"); *cf. United States v. Roberts,* 185 F.3d 1125, 1130, 1133 (10th Cir.1999) (holding that the property at issue was Indian country partly because it "was deeded to the United States of America in trust for the Choctaw Nation of Oklahoma so long as the premises are used for the purposes of the Choctaw Nation").

{12} Defendant also contends that the characteristics of the surrounding community are relevant in determining whether the land has been set aside so as to qualify as a dependent Indian community. He contends that even though State Road 16 is not within pueblo land at the site of the accident, it has the characteristics of Indian country. This approach may be appropriate under certain present federal decisions. *See, e.g., United States v. Arrieta,* 436 F.3d 1246, 1250 (10th Cir.2006) (applying Tenth Circuit precedent that requires examination of "the entire Indian community, not merely a stretch of road, to ascertain whether the federal set-aside and federal superintendence requirements are satisfied"); *HRI, Inc. v. Envtl. Prot. Agency,* 198 F.3d 1224, 1249 (10th Cir.2000) (concluding that a community of reference analysis is required before determining whether land qualifies as a dependent Indian community under set-aside and federal superintendence requirements). However, we decline to consider these characteristics because they are relevant to the community of reference inquiry which was specifically rejected as a factor under New Mexico case law in *Frank,* 2002–NMSC–026, ¶¶ 9, 22, 132 N.M. 544, 52 P.3d 404. Even if State Road 16 is surrounded exclusively by Indian land, we look at the land where the accident actually occurred and, in this case, it is not Indian land. *See id.* ¶ 16 (quoting *Venetie,* 522 U.S. at 530–31 n. 5, 118 S.Ct. 948, and holding that in determining whether land is a dependent Indian community the status of *"'the land in question'"* is examined); *cf. Dick,* 127 N.M. at 385, 981 P.2d at 799 (recognizing that "[t]he first prong of *Venetie,* federal set-aside, seems to obviate, to some extent, the need for defining the relevant community").

{13} We now turn to Defendant's argument that the practical uses of State Road 16 should be considered in determining whether the land has been set aside as Indian land for the use and benefit of Indians. Defendant points out that from I–25, State Road 16 is the only northern access to Cochiti Pueblo lands, the Cochiti Pueblo Center, and Cochiti business enterprises. These include Cochiti Pueblo, the Town of Cochiti Lake, Cochiti Lake itself, and the Cochiti Golf Course. Defendant therefore claims that the State intended to create a route for Indians to reach these lands and enterprises when it constructed State Road 16. However, there is nothing in the *Venetie* and *Frank* decisions to suggest that such a practical effect of constructing a State highway on federal land is taken into account when determining whether the underlying land has been set aside for the use or benefit of Indians as Indian land. *See Frank,* 2002–NMSC–026, ¶ 22, 132 N.M. 544, 52 P.3d 404 (declining to incorporate the community of reference inquiry into New Mexico case law in light of the clear guidelines set forth in the *Venetie* opinion); *see also M.C.,* 311 F.Supp.2d at 1297 (concluding that an Indian school was not set aside by the federal government for the use of Indians as Indian land because it failed to qualify as a dependant Indian community). Furthermore, there is no evidence in the record, written or otherwise, as to the intention of the New Mexico Highway Department in building the road. In the absence of evidence showing that land in question is held by, or in trust for the benefit of Indians, we disagree that proximity to Indian land or the importance of land to a community of Indians is sufficient of itself to establish the requisite federal set-aside. *See M.C.,* 311 F.Supp.2d at 1295 (holding that land set aside for the use of the Bureau of Indian Affairs (BIA) and administered by the BIA without any treaty, trust, or other obligation to any Native American group was not set aside for the use of Indians as Indian land); *cf. Blunk v. Ariz. Dep't of Transp.,* 177 F.3d 879, 884 (9th Cir.1999) (holding that land does not become Indian country because of "its proximity or importance to the Navajo Reservation").

{14} Defendant invokes the provisions of the Santo Domingo Pueblo Claims Settlement Act of 2000, 25 U.S.C. §§ 1777, 1777 a-e (2000) (the Act), to support his contention that the accident site was part of a federal set-aside. Defendant claims that under the Act, the site of the accident was "reserved by the federal government and made available with other National Forest Service lands for purchase by the Santo Domingo Pueblo." *See* 25 U.S.C. § 1777(b)(4)(D); 25 U.S.C. § 1777c(c)(2)-(4). We disagree. The Act merely authorizes Santo Domingo Pueblo to purchase certain federal land now owned by the National Forest Service; it does not set aside the land for Indian use until such purchase is made. *See* 25 U.S.C. § 1777c(c)(3), (5); 25 U.S.C. § 1777d(b). There is no evidence that Santo Domingo purchased this strip of land before the Act was in effect and owned it at the time of the accident. To the contrary, both parties concede that the land was part of Santa Fe National Forest at the time of the accident. Unless, and until, Santo Domingo Pueblo purchases this l and, it is expressly not Indian country. *See* 25 U.S.C. § 1777d(b), (d); 25 U.S.C. § 1777c(c)(2)-(5).

### Federal Superintendence

■ {15} Having held that the first prong of *Venetie* is not satisfied, we need not address the second prong. *See Venetie*, 522 U.S. at 530, 118 S.Ct. 948 (concluding that, "in enacting § 1151(b), Congress indicated that a federal set-aside *and* a federal superintendence requirement must be satisfied for a finding of a 'dependent Indian community' "); *Romero*, 2004–NMCA–012, ¶¶ 26–28, 135 N.M. 53, 84 P.3d 670 (concluding that the land in question did not satisfy the set-aside prong of *Venetie* and did not consider whether the land satisfied the second prong). We nevertheless conclude that the district court erred in finding that State Road 16 at the point of the accident is under federal superintendence.

{16} Defendant claims that the federal government is exercising federal superintendence by holding title in the land. We agree that title might be relevant except that, in this case, title is held in the National Forest Service; it is not held in trust or in any other form for the benefit or the use of Indians.

Therefore, title does not indicate control by the federal government on behalf of Indians. *See Venetie*, 522 U.S. at 533, 118 S.Ct. 948 (explaining that the exercise of federal superintendence is present where the federal government actively controls the land in question "effectively acting as guardian for the Indians"). Instead, to whatever extent the federal government exercises control over the land, it is not acting as guardian for the Indians.

### Senate Bill 279

{17} Finally, we note that on December 20, 2005, Congress passed Senate Bill 279, which amended the Pueblo Lands Act of 1924 by adding Section 20, which pertains to jurisdiction. Pub.L. No. 109–133, § 1, 119 Stat. 2573 (2005). The State submitted the amendment as additional relevant authority on December 21, 2005. The addition of Section 20 confers jurisdiction on the United States over certain crimes "committed by or against an Indian" if the offense is committed "anywhere within the exterior boundaries of any grant from a prior sovereign, as confirmed by Congress or the Court of Private Land Claims to a Pueblo Indian tribe of New Mexico." Pub.L. No. 109–133, § 1, 119 Stat. 2573. In this case, there is no suggestion that the land in question was ever within the original exterior boundaries of any land grant. *Cf. Romero*, 2004–NMCA–012, ¶ 8, 135 N.M. 53, 84 P.3d 670 (observing that the land in question is located in "an area within the original exterior boundaries of the Taos Pueblo Grant" (internal quotation marks omitted)). Therefore, we see no need to apply or construe Senate Bill 279.

### Conclusion

{18} For the reasons set forth above, we reverse the district court's order dismissing the criminal complaint against Defendant for lack of subject matter jurisdiction.

{19} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge, and RODERICK T. KENNEDY, Judge.