Certiorari Granted, July 12, 2013, No. 34,122

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:  2013-NMCA-078

Filing Date:  April 1, 2013

Docket No. 31,322

STATE OF NEW MEXICO,

      Plaintiff-Appellant,

v.

STEVEN B.,

      Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF McKINLEY COUNTY
Grant L. Foutz, District Judge

Gary K. King, Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Appellant

Bennett J. Baur, Acting Chief Public Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellee

Harrison Tsosie, Attorney General
Paul W. Spruhan, Assistant Attorney General
Window Rock, AZ

for Amicus Curiae Navajo Nation Department of Justice

OPINION

WECHSLER, Judge.

**{1}** In *State v. Dick*, 1999-NMCA-062, 127 N.M. 382, 981 P.2d 796, this Court held that the State does not have jurisdiction to prosecute a criminal defendant within Parcel Three of the former Fort Wingate Military Reservation (Parcel Three). A subsequent decision by the United States District Court for the District of New Mexico, *United States v. M.C.*, 311 F. Supp. 2d 1281 (D.N.M. 2004), decided otherwise. In this appeal, the State asks this Court to agree with the federal court decision and overrule its holding in *Dick*. Because we continue to believe that Parcel Three is within "Indian country" as defined by 18 U.S.C. § 1151 (1949) and discussed in *Alaska v. Native Village of Venetie Tribal Government* (*Venetie*), 522 U.S. 520 (1998), we affirm the ruling of the district court dismissing the State's prosecution.

**BACKGROUND**

**{2}** A petition charged Child (an enrolled member of the Navajo Nation) with committing the delinquent act of battery upon a school employee. Child filed a motion to dismiss for lack of subject matter jurisdiction, asserting that the incident charged occurred in "Indian country" under *Dick*. As described in detail in *Dick*,

> "Fort Wingate" refers to a tract of 100 square miles designated in 1870, and an additional 30 square miles designated in 1881, as a military reservation. In 1950, Congress enacted a public law retaining title to 13,150 acres of Fort Wingate in the United States, but transferring the land to the Department of the Interior for the use of the Bureau of Indian Affairs (BIA). *See* Public Law 567, 64 Stat. 248 (1950) . . . . The Fort Wingate area remains titled in the United States government, with the exception of sixteen acres that are privately owned.

*Dick*, 1999-NMCA-062, ¶ 3. As further described in *Dick*, Fort Wingate consists of four separately administered parcels. *Id.* ¶ 4. The incident in this case took place at Wingate High School, which is located in Parcel Three, the same parcel as in *Dick* and *M.C. Dick*, 1999-NMCA-062, ¶ 5; *M.C.*, 311 F. Supp. 2d at 1282.

**{3}** According to the district court's findings of fact, in 1950, Parcel Three was assigned to the BIA for school purposes, and the BIA operates Wingate High School and Wingate Elementary School on Parcel Three "primarily, but not exclusively, for the education of Indian [c]hildren." The BIA controls all occupancy within Parcel Three except on the privately owned property, which is surrounded by Parcel Three. The BIA housing is exclusively for students and school employees and their families. The students at the schools are mostly Navajo; ninety-eight percent of the 540 students at the high school, with the remainder from other Indian tribes, and the majority of the 617 students at the elementary school. About seventy-five percent of the high school students and fifty percent of the elementary school students board at the student dormitories. A school board elected at Navajo Nation elections establishes school policies, curriculum, and budget, and the schools also comply with the State of New Mexico educational requirements, including teacher

2

licensure. The principals are BIA employees. With respect to law enforcement protective services, the Navajo Nation, McKinley County Sheriff's Office, and the New Mexico State Police all serve Parcel Three. Utility and fire protective services are not provided by "any Indian Tribe, Indian government, or Indian enterprise." The Navajo Nation has prosecuted misdemeanors that have occurred at the schools in the Navajo Nation courts. *M.C.*, 311 F. Supp. 2d at 1284.

**{4}** Concluding that it was bound by *Dick*, the district court granted Child's motion to dismiss. The State appealed.

## DEFINITION OF INDIAN COUNTRY

**{5}** The central issue before us is whether Parcel Three is within "Indian country" as defined by Congress in 18 U.S.C. § 1151. If Parcel Three, the location of the incident giving rise to the petition charging Child, is within "Indian country," the State would, as a general matter, lack jurisdiction over the case. *See Dick*, 1999-NMCA-062, ¶ 8 (stating that "[a]s a general principle, a state has no jurisdiction over crimes committed by an Indian in 'Indian country'"). Because the State does not contest the facts found by the district court, we review de novo whether the district court correctly applied the law to the facts, viewing the facts in the manner most favorable to Child as the prevailing party. *See State v. Frank*, 2002-NMSC-026, ¶ 10, 132 N.M. 544, 52 P.3d 404.

**{6}** 18 U.S.C. § 1151 provides:

> "Indian country[,]" as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

**{7}** At issue in this case is Subsection (b), whether Parcel Three is within "Indian country" because it is a "dependent Indian community." The United States Supreme Court has interpreted this subsection to include two requirements for a finding of a dependent Indian community, that the land in question (1) "must have been set aside by the Federal Government for the use of the Indians as Indian land"; and (2) "must be under federal superintendence." *Venetie*, 522 U.S. at 527. The State concedes that Parcel Three is under federal superintendence; it is the first requirement, a federal set aside, that raises the differences in the parties' positions.

## FEDERAL SET-ASIDE REQUIREMENT

3

**{8}** In interpreting 18 U.S.C. § 1151, the Supreme Court in *Venetie* observed that the "federal set-aside requirement ensures that the land in question is occupied by an 'Indian community[.]'" *Venetie*, 522 U.S. at 531. By footnote, it further observed that some congressional action was necessary "to create or to recognize Indian country." *Id.* n.6.

**{9}** The United States Supreme Court stated that 18 U.S.C. § 1151(b) was a codification by Congress of the two requirements that the Court had previously held to be required for a finding of "Indian country" in two cases, *United States v. Sandoval*, 231 U.S. 28 (1913), and *United States v. McGowan*, 302 U.S. 535 (1938). *Venetie*, 522 U.S. at 528-30. *Sandoval* involved the jurisdiction of the Santa Clara Pueblo land that, although held in fee simple by the Pueblo, was recognized by Congress as the Pueblo's ancestral land and was subject to Congressional enactments "in the exercise of the Government's guardianship over . . . [Indian] tribes and their affairs, including federal restrictions on the lands' alienation." *Venetie*, 522 U.S. at 528 (alteration in original) (internal quotation marks and citations omitted). The Court held that Congress "could exercise jurisdiction over the Pueblo lands, under its general power over all dependent Indian communities within its borders[.]" *Id.* (internal quotation marks and citation omitted). In addition, by executive orders, additional public land had been reserved for the Pueblos' "use and occupancy." *Id.* (internal quotation marks and citation omitted). In *McGowan*, the government held the land "in trust for the benefit of the Indians residing there." *Venetie*, 522 U.S. at 529. The Court held that the Government created an Indian colony that had been "validly set apart for the use of the Indians . . . under the superintendence of the Government" was "Indian country." *Id.* (alteration in original) (internal quotation marks and citation omitted).

**{10}** *M.C.*, relying on *Venetie*, *Sandoval*, and *McGowan*, concluded, as did the Tenth Circuit in *Blatchford v. Sullivan*, 904 F.2d 542 (10th Cir. 1990), that the federal set-aside requirement is not met unless the community at issue is "located on tribal lands or land held in trust for Native Americans." *M.C.*, 311 F. Supp. 2d at 1295. In addition, *M.C.* declined to find a dependent Indian community because the Wingate school community was not "created by Native Americans themselves or the federal government to provide for the use, occupancy[,] and protection of the community." *Id.*

**{11}** As discussed in *M.C.*, although the federal cases addressed in *Venetie* and *M.C.* do not conclude that there is a dependent Indian community without tribal or trust land, we do not read *Venetie* to restrict a dependent Indian community to tribal or trust land. *M.C.*, 311 F. Supp. 2d at 1294. *Venetie* only necessitates a federal set aside and federal superintendence for a finding of a dependent Indian community. *Venetie*, 522 U.S. at 530. Indeed, the federal set-aside requirement may be more evident if tribal or trust land is involved; nevertheless, such ownership is not required.

**{12}** *M.C.* also emphasizes that "no Native American tribe dwells on the land in Parcel Three." 311 F. Supp. 2d at 1295. It discounts that students and staff live at the school or in Parcel Three because such occupancy "is dependent upon attendance or employment at the [s]chool." *Id.* According to *M.C.*, a federal set aside demands that the resultant community

4

be "created by Native Americans themselves or the federal government to provide for the use, occupancy[,] and protection of the community." *Id.* It relies in this regard on *United States v. Myers*, 206 F. 387 (8th Cir. 1913), in which the Eighth Circuit held that the United States' reserving a tract of land that Indian tribes ceded to the United States for public purposes, including a boarding school for Indians, did not convert the tract of land into "Indian country." *Id.* at 393-94. The Eighth Circuit stated that "Indian country" required retention by Indians of "the right of use and occupancy, involving—under certain restrictions—freedom of action and of enjoyment in their capacity as a distinct people[.]" *Id.* at 394.

**{13}** However, as with ownership, nothing in the *Venetie* federal set-aside requirement makes such a demand in the limited manner that *M.C.* and *Myers* suggest. *Myers* was decided before 18 U.S.C. § 1151 was enacted and did not address the concept of "dependent Indian community" stated in the statute. By setting aside Parcel Three, the federal government did provide for the use and occupancy of the land by Native Americans. As discussed in *Dick*, by virtue of the federal set aside of Public Law 567, the federal government created a community for the education and occupancy of primarily Native American students. *Dick*, 1999-NMCA-062, ¶ 23. Although the Navajo Nation shares oversight responsibilities over Parcel Three with the BIA and the State, it nevertheless exercises a degree of control with respect to the protection of Parcel Three through emergency response and court jurisdiction and to the operation of the schools through election to the school board.

## OVERRULING OF *DICK*

**{14}** We held in *Dick* that Parcel Three of the former Fort Wingate Military Reservation met both the set-aside and federal-superintendence requirements of *Venetie* such that it is a "dependent Indian community" under 18 U.S.C. § 1151. *Dick*, 1999-NMCA-062, ¶ 28. The State requests that we overturn *Dick*, a request that we do not consider lightly. We share our Supreme Court's view and "are reluctant to overturn precedent because it promotes stability of the law, fairness in assuring that like cases are treated similarly, and judicial economy." *State v. Riley*, 2010-NMSC-005, ¶ 34, 147 N.M. 557, 226 P.3d 656. We will nevertheless deviate from our precedent for compelling reasons, including when the previous decision is "so unworkable as to be intolerable" or "indefensible." *Id.* (internal quotation marks and citation omitted); *State v. Kerby*, 2005-NMCA-106, ¶ 29, 138 N.M. 232, 118 P.3d 740, *aff'd*, 2007-NMSC-014, ¶ 26, 141 N.M. 413, 156 P.3d 704.

**{15}** The State's arguments in this appeal do not compel our departing from *Dick*. First, as we have discussed, Parcel Three fits within the set-aside requirement of *Venetie* when we do not read *Venetie* in the overly restrictive manner as suggested by *M.C.* and the State. Second, in *State v. Quintana*, 2008-NMSC-012, ¶ 6, 143 N.M. 535, 178 P.3d 820, our Supreme Court relied on *Dick* in considering the sufficiency of the federal set-aside requirement before it in that case. Third, although the State asserts that in the aftermath of *M.C.* an intolerable situation exists in that "federal criminal jurisdiction over major crimes

committed" in Parcel Three does not lie, the issue before this Court in *Dick*, and in this case, is the application of state, not federal, jurisdiction. *M.C.* is a decision of a single federal district court. The decision to prosecute crimes in federal court rests with the United States Attorney.

**CONCLUSION**

{16}    As we held in *Dick*, Parcel Three of the former Fort Wingate Reservation is a "dependent Indian community" under 18 U.S.C. § 1151. Therefore, because the acts addressed in this case occurred in "Indian country," the State did not have jurisdiction to prosecute the case. We affirm the district court's grant of the motion to dismiss.

{17}    **IT IS SO ORDERED.**

_____
        **JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**MICHAEL E. VIGIL, Judge**

**Topic Index for *State v. Steven B.*, No. 31,322**

**JURISDICTION**
Subject Matter

**INDIAN LAW**
Indian Lands
Tribal and State Authority and Jurisdiction

6